493 A.2d 370

**CENTURY I JOINT VENTURE, et al.**

v.

**UNITED STATES FIDELITY & GUARANTY COMPANY, et al.**

**No. 1367, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

June 7, 1985.

**546**

**548**

Victor H. Laws, III, Salisbury (Jean S. Laws and Laws & Laws, P.A., Salisbury, on brief), for appellants.

E. Dale Adkins, III, Baltimore (John R. Sutherland, E. Philip Franke, III, and Anderson, Coe & King, Baltimore, on brief), for appellee Avery W. Hall Ins. Agency, Inc.

Alan Hilliard Legum, Annapolis, for appellee, U.S. Fidelity & Guar. Co.

Argued before BISHOP, ALPERT and BLOOM, JJ.

BLOOM, Judge.

The developers of a condominium project sought a declaratory judgment that their insurer was obligated to defend and indemnify them in an action for faulty design and construction that was brought by the purchasers of the individual condominium units. Alternately, the developers sought a declaratory judgment that their insurance broker was negligent or breached its contract with them by failing to procure proper and adequate insurance. The Circuit Court for Worcester County first sustained the broker's demurrer to appellants' petition, without leave to amend, then granted a motion for summary judgment on behalf of the insurance company, whereupon the developers filed a timely appeal to this court.

## Background

Appellant Century I Joint Venture (Joint Venture) is a development company that was formed in 1972 for the purpose of constructing a twenty-seven story high-rise condominium in Ocean City, Maryland. While Joint Venture handled the financing and marketing aspects of the project, it employed a general contractor to erect the building and two architectural firms to design the structure and oversee

the actual construction. Shortly before the completion of the project in July of 1974, Joint Venture created appellant Century I Leasehold Corporation (Leasehold Corporation) as a marketing device through which it could transfer leasehold interests to the purchasers of the individual condominium units.

In October of 1980 the owners of the condominium units, acting through the Century I Condominium Corporation, an incorporated condominium association, brought suit against Joint Venture, Leasehold Corporation, the general contractor, the two architectural firms, and a mechanical engineer, asserting various claims relating to "faulty design and improper construction." The declaration included counts for negligence and breach of implied warranties under Md.Real Prop.Code Ann. § 10–203 against all the named defendants; it also asserted fraudulent misrepresentation and breach of fiduciary duty on the part of the appellants.[1]

Joint Venture and Leasehold Corporation notified their insurance broker, appellee Avery W. Hall Insurance Agency, Inc., of the impending lawsuit and stated that they expected their insurer, appellee United States Fidelity & Guaranty Company (USF & G), to provide them with a defense to the suit. The broker had previously procured two policies of liability insurance from USF & G for the appellants. The first policy was a comprehensive general liability (CGL) policy that provided coverage in the amount of $100,000 for

---

1. Specifically, the condominium association alleged the following defects: (1) defective concrete finishing in the balcony edges and walls, resulting in "pop outs" or exposure of the steel bars used to reinforce the concrete; (2) damage to balcony slabs caused by improper fixture of balcony handrails; (3) water penetration resulting from inadequate caulking; (4) improper ventilation of the sauna/exercise room; (5) insufficient ventilation and heating of the indoor swimming pool; (6) defective domestic water pump; (7) inadequate fire protection due to use of inferior fire-resistant materials in the ventilation shafts; (8) disintegration of the roof; (9) various other building and electrical code violations.

all sums which the *Insured* shall become legally obligated to pay as damages because of

    A.  *bodily injury* or

    B.  *property damage*

to which this insurance applies, caused by an *occurrence,* and the [insurer] shall have the right and duty to defend any suit against the *Insured* seeking damages on account of such *bodily injury* or *property damage,* even if any of the allegations of the suit are groundless, false or fraudulent. . . .

(Emphasis in original). The second policy, entitled "Comprehensive Excess Indemnity Policy," provided liability coverage of up to $1,000,000 per occurrence,

for all sums which the *Insured* shall become obligated to pay as *damages* and *expenses,* (all as defined herein as included within the term *"ultimate net loss "*) by reason of liability imposed upon the *Insured* by law, or by *contractual liability,* because of

    (1) *personal injury* or *property damage* caused by, or

    (2) *advertising liability* arising out of an *occurrence* which takes place anywhere.

(Emphasis in original). In limiting the insured's coverage under this policy to the "ultimate net loss," the excess policy encompassed those damages and expenses that would not be covered by any underlying liability insurance.

By letter dated December 16, 1980, USF & G informed counsel for appellants that it disclaimed any obligation under either policy to indemnify appellants or to provide them with a defense.

Appellants thereupon brought this action against USF & G and Avery W. Hall Insurance Agency, Inc., requesting a declaration that USF & G was obligated to indemnify and defend them in the condominium association's suit or, alternatively, that the broker was negligent and had breached its contract with and had violated its fiduciary duty to the appellants by failing to procure appropriate and adequate liability insurance coverage for the Century I condominium

project. Appellants also sought an award of damages for the expenses they had incurred thus far in defending themselves in the prior lawsuit.

The broker's demurrer to the petition was sustained without leave to amend, the court merely stating that "the action should be brought as a negligence case, *American Home Assurance v. Osbourn* [47 Md.App. 73, 422 A.2d 8 (1980)] was a negligence case."

USF & G filed a motion for summary judgment, relying solely upon exclusions contained in both policies, which they appended to the motion. These exclusions provided: [2]

This insurance does not apply:

\*      \*      \*      \*      \*      \*

(n) to *property damage* to the *Named Insured's products* arising out of such products or any part of such products;

\*      \*      \*      \*      \*      \*

(o) to *property damage* to work performed by or on behalf of the *Named Insured* arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith.

(Emphasis in original).

Both policies defined *"Named Insured's products"* as goods or products manufactured, sold, handled or distributed by the *Named Insured* or by others trading under his name, including any container thereof (other than a vehicle), but *"Named Insured's products"* shall not include a vending machine or any property other than such container, rented to or located for use of others but not sold.

(Emphasis in original).

After hearing testimony regarding the motion, the trial judge concluded:

---

**2.** The format is that of the CGL policy. The exclusions in the excess indemnity policy were identical in language but somewhat different in format.

I don't think the intention of the policy, such as this, or that the language of it, when you consider the exclusions was intended to allow a developer to defray the damages created from its own inferior product off on an insurance company. I believe in this particular case that the named insured was the developer, and the work product and work performed was the building of this building. To me the language is crystal clear.

Appellants contend on appeal that

1. Summary judgment for the insurer was erroneous because the policy exclusions relied on are inapplicable, ambiguous, or required a factual predicate which was lacking or disputed.

2. The circuit court erred in sustaining Hall's demurrer without leave to amend.

The court properly granted summary judgment on behalf of the insurance carrier, but it erred in sustaining the broker's demurrer without leave to amend. We will, therefore, affirm the judgment in favor of USF & G but reverse the judgment in favor of Avery W. Hall Insurance Agency, Inc.

## I. Summary Judgment as to USF & G

Summary judgment is appropriate only when "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Md.Rule 2–501. The summary judgment procedure is not a substitute for a trial, but rather is a hearing to determine whether a trial is necessary. *Wolfe v. Lamar & Wallace, Inc.*, 261 Md. 174, 274 A.2d 121 (1971); *Hill v. Lewis*, 21 Md.App. 121, 318 A.2d 850 (1974). All inferences which may be drawn from the pleadings, affidavits or from admissions must be resolved against the moving party. *Merchants Mortgage Co. v. Lubow*, 275 Md. 208, 339 A.2d 664 (1975). Thus, if an affidavit or other evidence reveals a genuine conflict, the motion should be denied. *Wolfe v. Lamar & Wallace, Inc.*, *supra*.

In contesting the propriety of the circuit court's grant of summary judgment for the insured, appellants assert that exclusions (n) and (*o* ) are inapplicable because the Century I condominium building is neither their "work product" nor "work performed" by them.

These types of exclusions, commonly referred to as "business risks exclusions," are frequently used to limit an insurance company's liability policies. Courts have uniformly held that the purpose of exclusions such as these, for damages to the insured's work product or work project out of which an accident arises, is to remove any obligation of the insured to pay for the repair or replacement of the policyholder's own defective work or defective product. *See, e.g., Volf v. Ocean Accident and Guarantee Corp.*, 50 Cal.2d 373, 325 P.2d 987 (1958) (en banc); *Kendall Plumbing, Inc. v. St. Paul Mercury Insurance Co.*, 189 Kan. 528, 370 P.2d 396 (1962); *Minnicks, Inc. v. Reliance Insurance Co.*, 47 Md.App. 329, 422 A.2d 1028 (1980); *see also* 12 G. Couch, *Couch on Insurance* ¶ 44:464 (2d ed. 1964); 7A J. Appleman, *Insurance Law and Practice* § 4508 (rev. ed. 1972). Conversely, it is equally well established that such business risk exclusions permit coverage for damages to other property or for other accidental loss caused by the defective product or defective work. *Vobill Homes, Inc. v. Hartford Accident and Indemnity Co.*, 179 So.2d 496 (La.App.1966); *see Bundy Tubing Co. v. Royal Indemnity Co.*, 298 F.2d 151 (6th Cir.1962).

As one commentator explained:

The risk intended to be insured is the possibility that the goods, products or work of the insured, once relinquished or completed, will cause bodily injury or damage to property other than to the product or completed work itself, and for which the insured may be found liable.... The coverage is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained.

Henderson, *Insurance Protection For Products Liability And Completed Operations—What Every Lawyer Should Know*, 50 Neb.L.Rev. 415, 441 (1970) (citation omitted).

Although recognizing the purpose for which these exclusions are generally intended, appellants argue that in this instance they are inapplicable. With regard to exclusion (n), they assert that, by definition, a condominium building is not a "product." They analogize to the use of the term "goods" under the Uniform Commercial Code, Md.Com.Law Code Ann. § 2–105(1), and conclude that "by 'product' the policy mean[t] to include only movable items capable of being manufactured, sold, handled and placed in the chain of distribution to consumers." Alternatively, they assert that the term is ambiguous and therefore presented a question for the jury. *National Grange Mutual Insurance Co. v. Pinkney*, 284 Md. 694, 399 A.2d 877 (1979) (if insurance contract is ambiguous, construction is for the jury with ambiguity resolved in favor of the insured).

In arguing against the applicability of exclusion (o), appellants claim that, as developers and vendors of the condominium project, they were primarily involved in the marketing and sales of the project and insuring its financial viability. Since they hired a general contractor and several architects to do the actual work of planning and constructing the building, they contend that any property damage attributable to the condominium's construction or design is not work performed by them or on their behalf. In support of this argument, they point to *Lowitt v. Pearsall Chemical Corp.*, 242 Md. 245, 219 A.2d 67 (1966), in which the Court of Appeals held that the words "acting on behalf of the insured" do not encompass the work done by independent contractors such as the general contractor or the architects. At the very least, they contend, there was a factual dispute as to what work they did perform, making summary judgment inappropriate.

■ Although there are no Maryland decisions dealing with the precise questions raised under these exclusions, we

agree with the trial judge that the language is clear and unequivocal. Contracts of insurance are to be interpreted "like other contracts, according to the sense and meaning of the terms." *United States Fidelity & Guaranty Co. v. National Paving and Contracting Co.*, 228 Md. 40, 50, 178 A.2d 872 (1962); *see American Home Assurance Co. v. Osbourn*, 47 Md.App. 73, 422 A.2d 8 (1980). Words are to be given their customary and normal meaning. *State Farm Mutual Auto Insurance Co. v. Treas*, 254 Md. 615, 255 A.2d 296 (1969).

"Named insured's product" is defined under the policy to include both goods *and* products "manufactured, sold, handled or distributed by the insured." Obviously, then, the parties to the contract did not intend that the term "named insured's product" would be restricted to just goods, or else the addition of the word "products" to the definition would be "mere surplusage." *Webster's New Collegiate Dictionary* defines "product" as "something produced." The sense and meaning of exclusion (n) is that the policy did not insure against damages to the condominium arising from defects within the building itself. Since appellants' business consisted of the erection of a condominium building and the sale of individual condominium units therein, under a plain and ordinary interpretation of the exclusion, a condominium unit would be included within the definition "products ... sold ... by the named insured." *Cf. Biebel Brothers, Inc. v. United States Fidelity & Guaranty Co.*, 522 F.2d 1207 (8th Cir.1975); *Stillwater Condominium Association v. American Home Assurance Co.*, 508 F.Supp. 1075 (D.Mont.1981), *aff'd*, 9th Cir., 688 F.2d 848, *cert. denied*, 460 U.S. 1038, 103 S.Ct. 1429, 75 L.Ed.2d 789 (1983); *Indiana Insurance Co. v. DeZutti*, 408 N.E.2d 1275 (Ind.1980); *Fresard v. Michigan Millers Mutual Insurance Co.*, 414 Mich. 686, 327 N.W.2d 286 (1982); *Vernon Williams & Son Construction, Inc. v. Continental Insurance Co.*, 591 S.W.2d 760 (Tenn.1979). Thus, we find exclusion (n) entirely free of ambiguity as applied to these development companies.

Similarly, we find that the Century I condominium building, although not "work performed by" appellants, was certainly work performed on their behalf. *See Haugan v. Home Indemnity Co.*, 86 S.D. 406, 197 N.W.2d 18 (1972); *cf. American Employers' Insurance Co. v. Maryland Casualty Co.*, 509 F.2d 128 (1st Cir.1975) (construction company denied coverage under "work performed" exclusion, although it played no part in the actual construction of the building). The appellants, as developers of the condominium project, employed the architects and general contractor who actually designed and built the building, so the work was necessarily done on appellants' behalf.

The case cited by appellants, *Lowitt v. Pearsall Chemical Corp., supra*, 242 Md. 245, 219 A.2d 67, is inapposite. That case involved a bodily injury liability policy issued to an employer, which excluded coverage for "injury to any person who at the time of sustaining such injury is engaged in the service of and/or acting on behalf of the insured." The court held that an employee of an independent contractor who was injured while working on a project for the insured was not excluded from coverage under the policy, because as an employee of an independent contractor he was not acting "in the service of" or "on behalf of" the employer. The Court concluded that the key words in the exclusion were "in the service of," which requires a master-servant relationship and excludes independent contractors. The supplemental phrase "on behalf of" was deemed "to broaden very little, if at all, the reach of the phrase 'in the service of another.'" *Id.* at 258, 219 A.2d 67. The Court in *Lowitt* commented that to broaden the scope of the exclusion to everyone who could be said to be acting on behalf of the insured at the time of injury would emasculate the protection of a public liability policy because most persons lawfully on the premises of an insured could be said to be doing something "on behalf of" the insured. *Id.* at 258, 259, 219 A.2d 67. In the case *sub judice*, to limit the exclusion to work performed by a servant would unreasonably limit an exclusion beyond its plain meaning. A build-

ing erected on behalf of the insured by an independent contractor is no less work performed on behalf of the insured than if the building had been erected by servants of the insured.

■ Appellants finally claim that Leasehold Corporation should not be held to the terms of the exclusion, since it did not possess an ownership interest in the building until after the construction was substantially completed. As appellants concede, however, for reasons of public policy a developer-vendor is responsible under Maryland warranty law to the initial purchasers of improvements to realty, Md.Real Prop.Code Ann. § 10–203, regardless of when it obtained title to the property. *Starfish Condominium Association v. Yorkridge Service Corporation, Inc.*, 295 Md. 693, 458 A.2d 805 (1983). Leasehold Corporation was created while the project was still being completed, as part of the development scheme. This is evidenced by the addition of Leasehold as a "named insured" on the CGL policy, which was procured to protect the developers from liability connected with the building and sale of the condominium. Having been added to the policy as a named insured in order to enjoy its protection, Leasehold is bound by the provisions applicable to named insureds.

Appellants next urge that the language of another exclusion contained in the CGL policy creates an ambiguity in the policy that should have been presented to a jury to resolve. Exclusion (a) of the CGL policy provides:

> This insurance does not apply: (a) to liability assumed by the *Insured* under any contract or agreement except an incidental contract; but this exclusion does not apply to a warranty of fitness or quality of the *Named Insured's products* or a warranty that work performed by or on behalf of the *Named Insured* will be done in a workmanlike manner.

(Emphasis in original). Identical provisions, in somewhat different form, are contained in §§ 2.6 and 4.1 of the Excess Indemnity Policy.

■ The exception contained in exclusion (a) for actions brought for certain breaches of warranties seemingly conflicts with exclusions (n) and (*o*).[3]   The law regarding the interpretation of insurance contracts is clear, however, that the coverage under a policy extends only to those risks that are included within the coverage provision of the agreement.   *Weedo v. Stone-E-Brick, Inc.,* 81 N.J. 233, 405 A.2d 788 (1979).   That is, "exclusion clauses do not grant coverage;  exclusions limit the scope of coverage granted in the insuring agreement."   *Stillwater Condominium Association v. American Home Assurance Co., supra,* 508 F.Supp. at 1079.

Thus, under the coverage provisions of both policies the insurer agrees to pay "all sums which the insured shall become legally obligated to pay" *and "to which this insurance applies."* (Emphasis added).   The latter language indicates that the insurer is obligated to pay those risks delineated in the granting clause *as limited by* exclusions enumerated further on in the policy.   Exclusion (a) removes from the all-risk coverage "liability assumed by the insured under any contract or agreement except an incidental contract."   The exception to that exclusion restores coverage of sums for which the insured is liable under warranties of fitness or quality, or that work performed will be done in a workmanlike manner.   If no other exclusions operated to limit coverage of the risks included under the policy, then USF & G would be obligated to defend and indemnify the appellants, since the underlying action by the condominium association included a claim for breach of an implied warranty of fitness.   *See Brohawn v. Transamerica Insurance Co.,* 276 Md. 396, 347 A.2d 842 (1975).

Exclusion (a) must be read, however, in conjunction with exclusions (n) and (*o*), which exclude coverage for repair or replacement of the insured's own defective work.   Each

---

**3.** A portion of the claims brought by the condominium association was based upon an implied warranty contained in Md.Real Prop.Code Ann. § 10–203(a).

exclusion must be read against the provision granting coverage, rather than against the hazards referred to in other exclusions. In other words, each exclusion must be read independently of the other exclusions. *Weedo, supra,* 405 A.2d at 795. As a result, any coverage potentially provided by the policies under their coverage provisions in light of the exception in exclusion (a) is removed by the further exclusions for repair or replacement of the appellants' defective work product or faulty work performed.

■ Nor do we find the policies ambiguous when the exclusions are read in light of the nature and purpose of an all-risk policy such as a CGL. An all-risk policy is intended, by its broad grant of coverage for "all sums ... caused by an occurrence," to insure against any unexpected happening excepting those specifically excluded by the terms of the contract. As noted in *Stillwater, supra,* the insured is informed by the phrase "to which this insurance applies" that each exclusion must be considered separately against the granting clause. Exclusion (a)'s caution that *"this* exclusion does not apply to ..." should alert the reader that any coverage reinstated by this exception may be removed by other exclusions further on in the policy.

Our view with regard to the effect of exclusion (a) upon the "work product" and "work performed" exclusions is in accordance with that held by a majority of jurisdictions, and we believe it to be the better reasoned position. *See Stillwater Condominium Association v. American Home Assurance Co., supra,* 508 F.Supp. 1075; *U.S. Fire Insurance Co. v. Colver,* 600 P.2d 1 (Alaska 1979); *St. Paul Fire and Marine Insurance Co. v. Coss,* 80 Cal.App.3d 888, 145 Cal.Rptr. 836 (1978); *Weedo v. Stone-E-Brick, Inc., supra,* 405 A.2d 788; *Haugan v. Home Indemnity Co.,* 86 S.D. 406, 197 N.W.2d 18 (1972); *Vernon Williams & Son Construction, Inc. v. Continental Insurance Co.,* 591 S.W.2d 760 (Tenn.1979). *But see Custom Roofing Co. v. Transamerica Insurance Co.,* 120 Ariz. 196, 584 P.2d 1187 (Ariz. Ct.App.1978); *Fontainebleau Hotel Corp. v. United Fili-*

*gree Corp.*, 298 So.2d 455 (Fla.Dist.Ct.App.1974); *Commercial Union Assurance Co. v. Gollan*, 118 N.H. 744, 394 A.2d 839 (1978); *Aid Insurance Services, Inc. v. Geiger*, 294 N.W.2d 411 (N.D.1980).

II. Dismissal Without Leave to Amend as to Hall

We agree with appellants that the ruling on the demurrer filed by appellee Avery W. Hall Insurance Agency, Inc., was erroneous.

In sustaining the demurrer, the trial judge expressed his belief that a suit for declaratory judgment was inappropriate for raising a malpractice claim against the insurance broker. In his opinion, the action should have been brought as a civil suit based on negligence.

■ Under Maryland's Uniform Declaratory Judgment Act, Md.Cts. & Jud.Proc.Code Ann. § 3–401 *et seq.*, an action for declaratory relief is barred only when a specific statutory remedy is intended as the exclusive remedy for that particular cause of action. *Id.* § 3–409(b); *Maryland-National Capital Park & Planning Commission v. Washington National Arena*, 282 Md. 588, 596, 386 A.2d 1216 (1978).[4]

Section 3–409(c) of the Act specifically provides that a declaratory judgment may be sought notwithstanding the availability of concurrent common law, equitable, or extraordinary forms of relief.[5] Appellants included in their petition for declaratory relief a count in negligence against their insurance broker.

---

**4.** Md.Cts. & Jud.Proc.Code Ann. § 3–409(b) provides:
   (b) *Special form of remedy provided by statute*—If a statute provides a special form of remedy for a specific type of case, that statutory remedy shall be followed in lieu of a proceeding under this subtitle.

**5.** This section states:
   (c) *Concurrent remedies not bar for declaratory relief*—A party may obtain a declaratory judgment or decree notwithstanding a concurrent common-law, equitable, or extraordinary legal remedy, whether or not recognized or regulated by statute.
   Md.Cts. & Proc.Code Ann. § 3–409(c).

■ It was not improper for such a claim to be included in the petition for declaratory judgment, since any liability by the insurance broker was predicated upon a finding that the insurer was not obligated to the appellants under the insurance policies. The cause of action asserted against the broker—negligence—is a concurrent common law remedy that may properly be included in a petition for declaratory relief, there being no specific statutory remedy for this type of claim.

■ Courts do have some judicial discretion to refuse a declaratory judgment when it does not serve a useful purpose or terminate controversy. § 3–409; *Mayor of Baltimore v. Seabolt,* 210 Md. 199, 123 A.2d 207 (1956); *Staley v. Safe Deposit & Trust Co.,* 189 Md. 447, 56 A.2d 144 (1947). If granting a declaratory judgment would unduly burden or inconvenience the parties or allow one party to wrest control of litigation from another and cause a confusing alteration of the burden of proof, the court should refuse to grant declaratory relief. *Brohawn v. Transamerica Insurance Company, supra,* 276 Md. 396, 347 A.2d 842. But declaratory relief should not be denied merely because another form of remedy is available. *Mayor of Baltimore v. Seabolt, supra; Turner v. Manufacturers' Casualty Insurance Co.,* 206 Md. 601, 112 A.2d 670 (1955); *Ryan v. Herbert,* 186 Md. 453, 47 A.2d 360 (1946).

■ If the court felt that declaratory relief should be denied because an action for damages for breach of contract or for negligence would be a more appropriate and convenient form of action, it could have permitted appellants to amend their claim and then stay it until the conclusion of the suit brought by the condominium owners against appellants, because any liability on the part of the broker would be conditioned upon the outcome of that case as well as upon the liability *vel non* of USF & G. Sustaining the demurrer without leave to amend was a clear abuse of judicial discretion in this case because it may have effectively prevented appellants from asserting any claim against

the broker. By the time the court ruled on the demurrer, more than three years had elapsed since appellants' cause of action against the broker accrued as the result of USF & G's denial of coverage.

JUDGMENT IN FAVOR OF APPELLEE UNITED STATES FIDELITY & GUARANTY COMPANY AFFIRMED; JUDGMENT IN FAVOR OF APPELLEE AVERY W. HALL INSURANCE AGENCY, INC., REVERSED.

COSTS TO BE PAID ONE–HALF BY APPELLANTS AND ONE–HALF BY APPELLEE AVERY W. HALL INSURANCE AGENCY, INC.