**RELIANCE INSURANCE COMPANY**

v.

**Samuel MOGAVERO.**

**Civ. No. JFM–84–802.**

United States District Court,
D. Maryland.

May 19, 1986.

Albert Brault, Brault, Graham, Scott & Brault, Rockville, Md., for plaintiff.

John H. Doud, III, Fedder & Garten, Baltimore, Md., for defendant.

## MEMORANDUM

MOTZ, District Judge.

In this diversity action Reliance Insurance Company seeks a declaratory judgment as to its obligations under a comprehensive general liability policy which it issued to Samuel Mogavero, t/a Mogavero & Son Builders. Mogavero performed construction work in connection with the renovation of the Beethoven Apartments, which had been damaged by fire. He was sued, together with others, in the Circuit Court for Baltimore City for having performed this work improperly. The present action was initially instituted while the Baltimore City case was pending. That case has now ended (except for the resolution of various cross-claims). The plaintiffs settled with all but one of the defendants during the trial, including Mogavero, and obtained a $30,000,000 verdict against the remaining defendant.

### I.

Mogavero played several roles during the renovation. He first contracted to do the demolition work. He was then hired to do all of the renovation work but a change order was issued soon thereafter pursuant to which the scope of his work was somewhat limited. He was to excavate and build a parking garage, install drywall for office spaces, rebuild elements of the rear wall and replace sidewalks. Later, after the original developers had failed financially and the ownership interest in the project had been transferred to the Trustees of the Loan Guarantee Program of the City of Baltimore, Mogavero contracted with the Trustees to install kitchen appliances and windows, floors, plumbing, heating and electricity, tile work, elevators, metal work, drywall and pointing, paint the interior and exterior, build the patio area and perform other work. The Trustees later sold the apartment building to another contractor/developer, Henry A. Knott.

In 1982 Knott, the City and the Trustees instituted the Baltimore City suit. The

complaint in that suit was amended several times. The Fourth Amended Declaration charged Mogavero with negligence, breach of contract, breach of express warranty and fraudulent concealment.[1] Specifically, Mogavero was alleged to have failed to have used

> ordinary skill and care in the construction and renovation work ... and to properly supervise the labor and materials used in the project, to select and supply reasonably competent subcontractors and suppliers, and to properly supervise the subcontractors.... As a result the building must be repaired to correct the numerous leaks ... the inadequate heating and cooling design and system, the failure to comply with plans and specifications for the heating and cooling system, the faulty workmanship performed and the improper materials used in the installation of the heating and cooling system, the faulty construction of the parking garage, and the various housing, building and other code violations.... As a proximate result ... plaintiffs have incurred and will incur substantial expenses in order to repair the Beethoven.... Additionally, the plaintiffs have been unable to rent the apartments ... and have lost rental income.

The injuries to the property included openings in the drywall exterior, omitted insulation, wrong glass type, air leaks, lack of heat, missing fireplace dampers, defective flues, inadequate electric water heater capacity, uninsulated hot water pipes, lack of firewalls, dampers, charred and rotted wood concealed, inadequate flooring supports, nonfunctional heaters, lack of fire stops, inadequate water pressure, improper drains and vents, unsealed pipes, inadequate and defective air conditioning system and cracking and settling, inadequate slab thickness, and other structural defects in the parking garage.

## II.

■ Mogavero contends in this action that Reliance provided him with coverage for the claims asserted in the Baltimore City suit and was under a duty to defend him in that suit. Reliance disagrees, and both sides have moved for summary judgment.[2]

The parties have engaged in extensive analysis of the language of the policy issued by Reliance to Mogavero. It is proper that they have done so since their respective rights and liabilities are governed by their agreement. However, this case turns upon one overriding principle: that Reliance issued a general liability policy, not a performance bond, to Mogavero. The language of the policy must be read against the background of this principle.

The pertinent provisions of the policy read as follows:

### [DEFINITIONS]

"occurrence"
> an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property

---

1. Except in their most recent papers, the parties have based their arguments on the facts as alleged in the pleadings. That is appropriate where the insured requests representation at the pleading stage. *See, e.g., Brohawn v. Transamerica Ins. Co.,* 276 Md. 396, 347 A.2d 842 (1975). When the request is not made until after the underlying case has been tried, the duty to defend is determined on the facts found by the judge or jury. *See Washington v. Federal Kemper Ins. Co.,* 60 Md.App. 288, 297 482 A.2d 503 (1984). Here, the request was made early in the underlying case, but this action is not being decided until after that case has been substantially resolved. For the purpose of the duty to defend question, the pleadings would still seem to be the proper focus, while the liability question would seem to turn upon the evidence at trial. In any event, the parties have not brought to the Court's attention material disparities between the allegations and the evidence.

2. Mogavero has moved to dismiss for failure to join as indispensible party (the City of Baltimore). In response Reliance has filed a motion for leave to amend the complaint. This Court believes that the issues which were dispositive of the case are presently ripe for consideration and can properly be resolved without adding the City as a plaintiff.

damage neither expected nor intended from the standpoint of the insured "property damage"

(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or

(2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.

## [EXCLUSIONS]

(a) ... liability assumed by the insured under any contract or agreement except an incidental contract; but this exclusion does not apply to a warranty of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner.

(m) ... loss of use of tangible property which has not been physically injured or destroyed resulting from ...

(2) the failure of the named insured's products or work performed by or on behalf of the named insured to meet the level of performance, quality fitness or durability warranted or represented by the named insured

but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the named insured's products or work performed by or on behalf of the named insured after such products or work have been put to use by any person or organization other than an insured

(n) ... property damage to the named insured's products arising out of such products or any part of such products

(y)(d)(2)(iii) ... property damage ... except with respect to liability under a written sidetrack agreement or the use of elevators to ... that particular part of any property, not on premises owned by or rented to the insurer ... the restoration, repair or replacement of which has been made or is necessary by reason of faulty workmanship thereon by or on behalf of the insured

(z) with respect to the completed operations hazard, ... property damage to work performed by the named insured arising out of the work or any portion therein, or out of materials, parts or equipment furnished in connection therewith.

Three questions are presented: (1) whether the damage suffered by the owners of the Beethoven Apartments was "property damage"; (2) whether this damage was caused by an "occurrence"; and (3) assuming that coverage otherwise exists, whether it excluded by one of the exclusionary clauses. Given the fundamental nature of the Reliance policy, each of these questions must be resolved against Mogavero.

"Property damage" has been defined to exclude defective work performed by the insured. *See, e.g., Vernon Williams & Son Construction, Inc. v. Continental Ins. Co.,* 591 S.W.2d 760 (Tenn.1979); *St. Paul Fire & Marine Ins. Co. v. Coss,* 80 Cal.App.3d 888, 145 Cal.Rptr. 836 (1978). While Mogavero contends that the claims against him include claims for damage which his poor workmanship caused to work which was done by other contractors, it is clear that any such claims are at most incidental and that the gravamen of the assertions against him is the defective quality of his own work product.

By the same token "occurrence" does not include the normal, expected consequences of poor workmanship. While over the years the definition of occurrence has been broadened to include "continuous or repeated exposure to conditions" as well as sudden catastrophes, it still connotes the idea of "accident" which is included in its policy definition. "Accident," in turn, has been defined by the Maryland Court of Special Appeals as "an event or condition occurring by chance or arising from unknown or remote causes ... [or] lack of intention or necessity." *American Home*

*Assurance Co. v. Osbourn,* 47 Md.App. 73, 422 A.2d 8 (1980).

If coverage were provided by the insuring clauses, the policy exclusions would nevertheless defeat Mogavero's contentions. As Mogavero contends, exclusion (a) does not apply because of the exception in that exclusion for claims for breach of warranty.[3] However, exclusions (m) and (n) have been directly held to exclude claims such as that submitted by Mogavero here. *See, e.g., Minnick's, Inc. v. Reliance Ins. Co.,* 47 Md.App. 329, 422 A.2d 1028 (1980); *Willets Point Contracting Co. v. Hartford Ins. Group,* 75 A.D.2d 254, 429 N.Y.S.2d 230, 233 (1980); *Century 1 Joint Venture v. U.S.F. & G.,* 63 Md.App. 545, 493 A.2d 370, *cert. denied* 304 Md. 297, 498 A.2d 1183 (1985); *Weedo v. Stone-E-Brick, Inc.,* 81 N.J. 233, 405 A.2d 788, 794 (1979). Cases construing exclusions (y)(2)(d)(iii) and (z) are to the same effect. *See, e.g., Minnick's v. Reliance Ins. Co., supra; St. Paul Fire and Marine Ins. Co. v. Coss, supra; Weedo, supra.*

### III.

The only remaining question is whether or not, despite its lack of liability to Mogavero under the policy, Reliance owed him a duty to defend in the Baltimore City action. Maryland law is clear that where facts are alleged against an insured that potentially give rise to a claim covered by the policy, the insurer does have an obligation to defend. *See, e.g., Brohawn v. Transamerica Ins. Co.,* 276 Md. 396, 347 A.2d 842, 850 (1975); *Western World Ins. Co. v. Hartford Mutual Ins. Co.,* 784 F.2d 558, 562 (4th Cir.1986). Mogavero argues that because the complaint in the Baltimore City action can be read as asserting claims based upon damage which his poor workmanship caused to work performed by oth-

er contractors, Reliance's duty to defend was triggered. Mogavero's reading of the complaint is quite strained. It is clear that the thrust of the claims against Mogavero is that his own work was defective. Any claim about the consequential effects upon his poor workmanship upon the work of others is incidental and *de minimus.* Perhaps if such a claim were proved Reliance could be properly required to cover the claim and compensate Mogavero for a *pro rata* portion of his attorney's fees incurred in defending that portion of the overall claims. However, to require Reliance to provide a defense for all of the claims when it is clear that there is no potentiality of coverage for the overwhelming majority of them would substantially expand Reliance's obligations under the policy beyond those reasonably contemplated by the parties.

For these reasons Reliance's motion for summary judgment is granted and Mogavero's motion for summary judgment is denied. A separate order to that effect and entering judgment on behalf of Reliance is being entered herewith.

### ORDER

For the reasons stated in the memorandum entered herein, it is this 19th day of May 1986

ORDERED that

(1) The motion to dismiss for failure to join an indispensible party is denied;

(2) The motion for leave to amend complaint filed by plaintiff is denied;

(3) The motion for summary judgment filed by plaintiff is granted; and

(4) The motion for summary judgment filed by defendant is denied.

---

**3.** Mogavero's additional contention that this exception imposes liability upon Reliance is without merit. It is a well-established principle that an exclusionary clause cannot itself create coverage. *See, e.g., American Home Assurance Co. v. Osbourn, supra; Simkins Indus. Inc. v. Lexington Ins. Co.,* 42 Md.App. 396, 401 A.2d 181 (1979). Thus, the exception to exclusion (a) does not extend coverage to the claims asserted against Mogavero. *See, e.g., Century 1 Joint Venture v. U.S.F. & G.,* 63 Md.App. 545, 493 A.2d 370, *cert. denied,* 304 Md. 297, 498 A.2d 1183 (1985); *Stillwater Condominium Assoc. v. American Home Assurance Co.,* 508 F.Supp. 1075 (D.Mont.1981).