**IA CONSTRUCTION CORPORATION**

v.

**T & T SURVEYING, INC., et al.**

**Civ. No. JFM–92–900.**

United States District Court,
D. Maryland.

June 1, 1993.

Gerard J. Pisarcik, Lemoyne, PA, for plaintiff.

Joseph M. Mott, Rockville, MD, Thomas Rogers Harrison, Mudd, Harrison & Burch, Towson, MD, George M. Church, Church and Houff, Baltimore, MD, for defendants.

## MEMORANDUM

MOTZ, District Judge.

Pending before the court is a motion filed by West American Insurance Company to dismiss a third-party complaint filed against it by T & T Surveying, Inc. The motion raises the question of the scope of the coverage provided under a general liability policy issued by West American to T & T.

### I.

This action arises out of a project for the design and construction of a MARC passenger train platform at the Camden Yards Station in Baltimore. IA Construction Corporation was the general contractor on the project pursuant to a contract which it had with the State of Maryland, Department of Transportation, and Mass Transit Administration. Parsons Brinckerhoff–Morrison–Knudsen ("PB/MK") had a design/managing contract with MTA for the project. T & T had a subcontract with PB/MK to perform certain surveying work.[1]

IA Construction alleges that T & T used erroneous data in laying out the foundation for the train platform and tracks. As a result, the platform allegedly was constructed at the wrong elevation and IA Construction was required to demolish certain work which it had completed and perform additional work on the platform in order to bring it to the proper elevation. According to IA Construction, it incurred costs of approximately $230,000 in performing this corrective work, and it has asserted claims for negligence, professional malpractice, breach of contract and indemnity against T & T to recover those costs.

The third-party claim filed by T & T against West American seeks a declaratory judgment that the claims asserted by IA Construction against T & T are covered by a general liability policy issued by West American to T & T. That policy covers "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which the insurance applies." Property damage is covered if it is caused by an "occurrence." "Property damage" is defined, in relevant part, as "physical injury to tangible property, including all resulting loss or use of that property [or] loss of use of tangible property that is not physically injured." "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

### II.

In *Reliance Ins. Co. v. Mogavero*, 640 F.Supp. 84 (D.Md.1986), I was called upon to decide the question of whether a general liability policy covered claims asserted against a contractor who had been sued by the owner of an apartment building for failing to use ordinary skill in performing renovation work. The faulty workmanship allegedly had required the owner to repair or replace the work done by the contractor at substantial expense. I held that the general liability policy did not afford coverage to the contractor for the claims asserted against it.

Although *Mogavero* is relevant to the issues here to be decided, it is not dispositive of them. Because the plaintiff's claims against Mogavero related to the cost of repairing and replacing work which Mogavero himself had done, I was able to defer to a later day the question of whether coverage would exist if a contractor's poor workmanship had consequential effects upon the work of others. *Mogavero*, 640 F.Supp. at 87. Since that is the very claim which T & T is asserting here, the day of decision on that

---

1. IA originally named PB/MK as a defendant but I have previously entered an order granting a motion to dismiss filed by PB/MK.

point has now arrived, at least in the specific factual context of this case.

 Although "property damage" has been construed as excluding defective work performed by the insured himself, *see Mogavero,* 640 F.Supp. at 86, and the cases cited therein, nothing in the case law or in the language of West American's policy suggests that the damage allegedly sustained by IA Construction does not fall within the term "property damage." That, however, is only one half of the equation. In order to be covered, "property damage" must have been caused by an "occurrence" which, both under the policy definition and common law precedent, "connotes the idea of 'accident.'" *Mogavero,* 640 F.Supp. at 86. Under Maryland law in the context of insurance law "accident" means an "undesigned, sudden and unexpected event, usually of an afflictive or unfortunate character, and often accompanied by a manifestation of force, but it does not mean the natural and ordinary consequences of a negligent act." *Ed. Winkler & Son, Inc. v. Ohio Cas. Ins. Co.,* 51 Md.App. 190, 195, 441 A.2d 1129, 1132 (1982) (quoting 7A Appleman, *Insurance Law and Practice,* § 4492 at 17 (1979)); *see also American Home Assurance Co. v. Osbourn,* 47 Md.App. 73, 422 A.2d 8 (1980). Here, no "accident" within this sense of the term occurred. Rather, all that is alleged to have happened is that T & T made a surveying error which required that work performed by another contractor in reliance upon it be redone. This is the stuff of the construction trade (and of professional malpractice insurance), not a risk protected against by a general liability policy.[2]

A separate order is being entered granting West American's motion to dismiss.

### ORDER

For the reasons stated in the memorandum entered herein, it is, this 1st day of June 1993

ORDERED that the motion to dismiss the third-party complaint filed by West American Insurance Company is granted.

---

2. Because I find that the claims asserted by IA Construction against T & T did not result from an "occurrence" within the meaning of West American's policy, I need not consider West American's alternative arguments that coverage for their claims is excluded (1) by a provision excluding coverage for property damages to "that particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it," or (2) an endorsement excluding coverage for damages caused by the preparation or approval of an incorrect survey. I note, however, that there may be fatal weaknesses in both of these arguments. As to the first exclusion, there is a completed operations hazard exception to the exclusion which may well apply; as to the second exclusion, it appears that the alleged damage resulted from survey work other than the preparation or approval of a specific survey.