UNITED STATES FIRE INSURANCE
COMPANY, et al., Plaintiffs,

v.

The MILTON COMPANY,
et al., Defendants,

and

Council of Unit Owners of Bentley Place
Condominium, Intervenor.

Civil Action No. 95–0537 (JR).

United States District Court,
District of Columbia.

Feb. 27, 1998.

James F. Jordan, David Patrick Durbin, Jordan Coyne & Savits, Washington, DC, Christopher R. Carroll, Carroll, McNulty & Kull L.L.C., Far Hills, NJ, for plaintiffs United States Fire Insurance Company and North River Insurance Company.

Donald Stephenson Schwinn, Jordan, Coyne & Savits, Washington, DC, Timothy Eugene Fizer, Law Office of Joseph F. Lavin, Baltimore, MD, Andrew Janquitto, Mudd, Harrison & Burch, Towson, MD, for plaintiff Northern Insurance Company of New York.

Barbara Kramer Morgan, Zuckerman, Spaeder, Goldstein, Taylor & Kolker, L.L.P., Washington, DC, for defendants The Milton Company and Tuckerman Lane Development Company.

Michael McGowan, McCarthy, Bacon & Costello, Washington Business Park, Lanham, MD, for defendant Liberty Mutual Insurance Company.

Mark H. Kolman, Dickstein, Shapiro, Morin & Oshinsky, Washington, DC, Lorelie S.

Masters, Anderson, Kill, Olick & Oshinsky, P.C., Washington, DC, Barry L. Steelman, Barry L. Steelman, P.A., Baltimore, MD, for Intervenor Council of Unit Owners of Bentley Place Condominium.

## MEMORANDUM ORDER

ROBERTSON, District Judge.

Plaintiffs United States Fire Insurance Company and North River Insurance Company filed this action against the developers and builders of Bentley Place, a Maryland condominium complex, in March 1995. They seek a declaratory judgment that liability insurance policies they wrote do not cover claims made and successfully adjudicated against the developers and builders in Maryland state court by the Council of Unit Owners of Bentley Place Condominium ("the Council"). The Council has intervened to assert the rights of the builders and developers, and three additional insurance companies that issued policies to the developers and builders—Assurance Company of America, Northern Insurance Company of New York, and Liberty Mutual Insurance Company—have joined the declaratory judgment action as plaintiffs.

Before the court are cross-motions for summary judgment by the insurance companies and the Council. For the reasons set forth in this memorandum, I have concluded that disputed issues of material fact preclude summary judgment and that the motions must be denied.

## BACKGROUND

Bentley Place Condominium Project ("the project") is a 240 unit complex located in Montgomery County, Maryland. It was developed by defendant Tuckerman Lane Development Company, Inc. ("Tuckerman"), and built by defendant Milton Company ("Milton"). Tuckerman owned the property, and Milton selected and coordinated the subcontractors who designed and built the project.

Tuckerman then sold the units to members of the public, making representations as to the quality of their construction. On October 31, 1991, the Council sued Tuckerman, Milton and Milton Schneiderman[1] in the Circuit Court for Montgomery County, demanding money damages for the use of defective materials and inferior workmanship by various subcontractors. The court directed a verdict for defendants on the causes of action sounding in intentional tort, but the jury awarded nearly $7 million in damages on the remaining six claims, for breach of contract, breach of implied warranty, breach of express warranty, negligence, negligent misrepresentation, and a violation of the Maryland Consumer Protection Act.[2]

According to intervenor's construction expert, the testimony in the underlying litigation focused on the measure of damages necessary to compensate the unit owners for the cost of repairing the "numerous construction defects ... [and] the damages which were caused by, or associated with repairing, those defects." Affidavit of Robert W. Davidson, A.I.A., ¶ 1, attached as Exhibit B to the Council's Opposition to Insurers' Motions for Summary Judgment and Memorandum in Support of the Council's Motion for Summary Judgment ("Davidson Affidavit"). The jury itemized its damage award as follows:

| | |
|---|---|
| Site Components | $ 214,787 |
| Exterior Building Envelope | $1,427,705 |
| Building Attic Spaces & Ventilation | $ 589,000 |
| Building Services | $ 142,400 |
| Interior Common Elements | $1,620,160 |
| Cathedral Beams | $ 693,000 |
| General Conditions (administrative) | $ 705,000 |
| Contingency (may be required) | $ 300,000 |
| Plumbing | $ 440,000 |
| HVAC | $ 550,000 |
| Total | $6,682,052 |

All of the policies[3] contain language limiting their coverage to liability for "property

---

1. Schneiderman is a principal of Milton.

2. Tuckerman and Milton were held jointly and severally liable for all of the damages. Schneiderman was held liable (jointly and severally with Tuckerman and Milton) for $1,061,000 of the damages.

3. Each insurance company issued one or more policies at various times during the construction of the project, and each of those policies was generally renewed annually. Several of the companies issued both primary and umbrella (excess liability) policies. Moreover, the policies contain various combinations of potentially relevant exclusions, and several variations of those exclusions.

damage" or "bodily injury" caused by an "occurrence," and each policy defines the term "occurrence." The United States Fire Insurance primary policies define "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." While some of the policies contain variations of that definition,[4] all of the policies involved in this case define "occurrence" as an "accident" and/or "exposure to conditions which result in ... Property Damage, neither expected nor intended from the standpoint of the insured." *See* Opposition to Insurers' Motion for Summary Judgment and Memorandum in Support of the Council's Motion for Partial Summary Judgment, at 23 (observing that " 'Occurrence' is similarly defined in each of the Insurers' policies.") None of the policies contains a definition of the word "accident."

## *ANALYSIS*

The threshold issue in this case is whether the Maryland jury award was for damages resulting from "occurrences" under the liability policies at issue. If and to the extent the damages did result from "occurrences," coverage will depend on the applicability of the various exclusions to the policies. If and to the extent they did not result from "occurrences" there is no coverage.

All parties agree that the recent decision of the Maryland Court of Appeals in *Sheets v. Brethren Mutual Insurance Company*, 342 Md. 634, 679 A.2d 540 (1996) ("*Sheets*"), must control my analysis, but, of course, they disagree about its application to the instant case. Intervenor argues that *Sheets*' adoption of a subjective standard to determine whether there has been an "occurrence" is dispositive here. Council's Reply to United States Fire and the North River Insurance Company's Opposition to the Council's Motion for Partial Summary Judgment, at 9.

Intervenor is correct, up to a point. The *Sheets* court did consider and reject an objective standard, concluding that "an act of negligence constitutes an 'accident' under a liability insurance policy when the resulting damage was 'an event that takes place without [the insured's] foresight or expectation.' " *Sheets*, 342 Md. at 652, 679 A.2d 540. Thus, the inquiry is not whether the insured should have foreseen or expected the damages to occur, but whether the insured in fact did foresee or expect the damages.

Intervenor goes on from that proposition to argue that the Maryland court's directed verdict on the intentional tort causes of action established that the defendants did *not* expect nor intend the damages to occur, and thus established the necessary "occurrence" as a matter of law. *See* Opposition to Motions for Summary Judgment and Memorandum in Support of the Council's Motion for Partial Summary Judgment, at 27.

The insurers reply that the jury's award was for variations on the single theme of breach of contract, and that contract losses are economic losses not covered by liability insurance, even under *Sheets*. They rely for this proposition on pre-*Sheets* Maryland cases holding that comprehensive general liability policies do not insure against damages for breach of contract. *See, e.g., Woodfin Equities Corp. v. Harford Mutual Ins. Co.*, 110 Md.App. 616, 678 A.2d 116 (1996) ("*Woodfin* "), *aff'd in part, rev'd in part*, 344 Md. 399, 687 A.2d 652 (1997); *Reliance Ins. Co. v. Mogavero*, 640 F.Supp. 84 (D.Md.1986) ("*Mogavero* "). The rule of those cases is that insurers issue "a general liability policy, not a performance bond," and that the term " 'occurrence' does not include the normal, expected consequences of poor workmanship." *Mogavero*, 640 F.Supp. at 85–86.

Similarly, the Maryland Court of Special Appeals, analyzing the "business risk exclusions" to comprehensive liability insurance, has observed that

> policies define "occurrence" as "injurious exposure to conditions which result in Bodily Injury or Property Damage, neither expected nor intended from the standpoint of the insured." United States Fire Insurance Company Statement of Material Facts as to Which There is No Genuine Dispute, at 9.

---

**4.** For example, the Liberty Mutual excess liability policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same harmful conditions." Liberty Mutual Insurance Company's Supplemental Memorandum, Exhibit 5 at 10; *Id.*, Exhibit 6 at 10. Similarly, the United States Fire umbrella

The risk intended to be insured [by a general liability policy] is the possibility that the goods, products or work of the insured, once relinquished or completed, will cause bodily injury or damage to property other than to the product or completed work itself. . . . The coverage is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained.

*Century I Joint Venture v. United States Fidelity & Guaranty Co.*, 63 Md.App. 545, 553–54, 493 A.2d 370 (1985) (*"Century I"*).

If the reasoning of *Woodfin,*[5] *Mogavero,* and *Century I* has survived *Sheets,* the plaintiff insurers are correct that coverage for "contractual liability" must be denied, for, even if the insured did not actually expect the damages, the pre-*Sheets* cases hold that contracting parties *do* expect to be liable for "make whole" damages if they fail to deliver that which they contractually promised. The question thus becomes whether the *Sheets* decision so fundamentally altered Maryland insurance law as to overrule the line of reasoning evident in *Woodfin, Mogavero,* and *Century I.* My conclusion is that it did not.

*Sheets* neither expressly nor impliedly disapproved of the reasoning of those opinions. On its facts, *Sheets* dealt with the duty to defend rather than to indemnify. The court held that the insurance company had a duty to defend because it was "conceivable" that the insureds did not foresee the damages, either when they entered the contract or when they negligently misrepresented the condition of the septic system. The claim for negligent misrepresentation involved in that case was "at least potentially covered under the policy as an 'occurrence.' " *Id.*

■ *Sheets* did not alter the basic proposition that liability insurance is distinct from a performance bond. A construction company entering a contract is deemed as a matter of law to expect that it will be liable to the

purchasers of the project if it should fail to deliver that which it promised. Its breach is not an "accident." Thus, under Maryland law, there is no "occurrence" under a comprehensive general liability insurance policy where, and to the extent that, a contractor's use of defective materials and substandard workmanship results in economic losses that would normally be recoverable in a breach of contract action.

■ If and to the extent the Council's damages resulted from "occurrences," the language of the policies at issue in this case presents two additional hurdles. First, the claims must be for "property damage." "Property damage" is defined by all of the policies as "a. physical injury to tangible property, including all resulting loss of use of that property; or b. loss of use of tangible property that is not physically injured." Opposition to Insurers' Motions for Summary Judgment and Memorandum in Support of the Council's Motion for Partial Summary Judgment, at 17. As the *Sheets* court explained, this definition excludes the replacement of substandard materials and repair of inferior workmanship: "The Sheetses concede that the money spent to fix the system was economic loss and thus not covered under the policy as property damage." *Sheets,* 342 Md. at 645, 679 A.2d 540. Second, all of the policies contain variations of the standard business risk exclusions used in Maryland general liability insurance contracts. While the "your work" exclusion exempts the work of subcontractors, and therefore may not apply to this case, the "your product" exclusion bars coverage for much of the damage to the condominium complex, notwithstanding Council's assertion that this exclusion does not apply to real property. *See, e.g., Woodfin,* 110 Md.App. at 649–51, 678 A.2d 116 (damage to HVAC system within "your product" exclusion); *Mogavero,* 640 F.Supp. at 87 (collecting cases in which "your product" exclusion barred coverage in construction cases).

---

5. Intervenor points out that the Maryland Court of Appeals reversed the *Woodfin* court on the "merits of the policy coverage issues." However, that reversal was because the Court of Appeals found that the intermediate court should not have reached the merits. The Court of Appeals did not express an opinion on the intermediate court's reasoning. 344 Md. at 415, 687 A.2d 652.

## DECISION

■ Some of the damages in the underlying litigation were awarded for the replacement of inferior or omitted materials and the correction of substandard workmanship. Those damages are not covered by the insurance policies at issue here. Other damages were apparently awarded to compensate the unit owners for losses they suffered as a *result* of the use of inferior materials and substandard workmanship. Those damages, to the extent that they were "consequential" damages caused by the breach of contract, represent another form of contract damages and are not covered by the policies at issue either. However, if and to the extent elements of the damages awarded to the Council would not ordinarily have been recoverable in a contract action—to the extent, that is, they were caused by the breach of contract but were not within the contemplation of the parties at the time of contracting[6]— then, if they are "property damage" not within a business risk exclusion, they are covered.

It appears that most of the claims presented at trial were for damages *not* covered by the policies—the replacement or repair of omitted or improperly installed materials. *See, e.g.,* Architectural Design Consultants, Inc., "Warranty Analysis, Bentley Place, August, 1990," Assurance and Northern Motion for Summary Judgment, Exhibit 6; Trial Testimony of Robert W. Davidson, *id.,* Exhibit 12; Report of Michael Snyder, *id.,* Exhibit 15; Trial Testimony of Donald G. Carter, *id.,* Exhibit 17; Davidson Affidavit.

There is some evidence, however, of damages that may be covered. One example— perhaps the only clear one that emerges from the record in its present state of development—is damage to roofing shingles, Fire Retardant Treated ("FRT") plywood roof sheathing, and resultant water damage to the interior of the units. The Council's uncontradicted claim is that those damages were caused by the failure of a subcontractor to leave adequate attic ventilation space, which resulted in high heat and humidity in the attic, damaging the FRT sheathing and the roofing shingles and causing numerous water leaks that damaged the interior of the project. Davidson affidavit, ¶ 5. Those damages may have been both unforeseeable (as a matter of contract law) and actually unforeseen (under the *Sheets* analysis).

■ The competing positions of the parties on each of the elements of damages awarded by the Maryland jury cannot be resolved on the present record, however. Genuine issues of material fact are clearly present. Summary judgment is inappropriate.

The problem, for the court as well as the parties, is how to proceed from this point forward. A trial would need to parse the elements of damages awarded in the underlying litigation. It would presumably entail additional testimony as to how each component of damages was caused and how it fits into the foregoing analysis. The most desirable outcome would be for the parties to revisit their respective settlement positions in light of the foregoing rulings on the law that will govern this case. If they are unable to resolve their dispute, the court will entertain proposals for a suitable trial format.

**ORDERED** that the motions for summary judgment of Northern Insurance Company of New York and Assurance Company of America [# 47], United States Fire Insurance Company and North River Insurance Company [# 48], Liberty Mutual Insurance Company [# 49], and Council of Unit Owners of Bentley Place Condominiums [# 53], are **denied.** And it is

**FURTHER ORDERED** that a status conference is set for April 1, 1998, at 10 a.m.

---

6. In Maryland, as elsewhere, damages for breach of contact are limited to those that arise naturally from the breach itself (consequential damages), and those that are shown to have been within the contemplation of both parties at the time of contracting (special or incidental damages). *Stone v. Chicago Title Insurance Company of Maryland,* 330 Md. 329, 338–40, 624 A.2d 496 (1993); *Pennsylvania Threshermen & Farmers' Mut. Casualty Ins. Co. v. Messenger,* 181 Md. 295, 300–01, 29 A.2d 653 (1943); *United States Telegraph Co. v. Gildersleve,* 29 Md. 232, 249–53 (1868).