**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

LORDS LANDING VILLAGE
CONDOMINIUM COUNCIL OF UNIT
OWNERS,
<u>Plaintiff-Appellee,</u>

v.                                                              No. 98-1639

CONTINENTAL INSURANCE COMPANY,
<u>Defendant-Appellant.</u>

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Peter J. Messitte, District Judge.
(CA-94-3377-PJM)

Argued: June 10, 1999

Decided: September 13, 1999

Before WIDENER, NIEMEYER, and TRAXLER,
Circuit Judges.

_____

Reversed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Jeffrey Roger Schmieler, SAUNDERS & SCHMIELER,
Silver Spring, Maryland, for Appellant. Kevin Thornton, KAPLAN &
KAPLAN, P.A., Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

The issue presented by this appeal is whether a standard comprehensive general liability ("CGL") insurance policy provides a condominium developer coverage for the costs of repairing faulty workmanship performed by the developer's subcontractors. We hold that the policy does not provide such coverage and therefore reverse the judgment of the district court finding coverage.

In May 1994, the Council of Unit Owners at Lords Landing Village Condominium complex ("Unit Owners") sued the developer of the complex, Wellington Homes, for faulty workmanship, including, inter alia, failure to prime wood before painting, causing the wood to rot. The faulty work had been performed for Wellington Homes by subcontractors. Following a trial, the jury returned a verdict in favor of the Unit Owners and against Wellington Homes in the amount of $1.1 million, based on breaches of express and implied warranties and violations of the Maryland Consumer Protection Act.

When the Unit Owners were unable to collect the $1.1 million judgment from Wellington Homes, they brought this action directly against Wellington Homes' insurer, Continental Insurance Company, which had issued a CGL insurance policy to Wellington Homes. That policy, which was an industry standard CGL policy, provided coverage for sums that Wellington Homes became legally obligated to pay because of "property damage" caused by an "occurrence." The policy defined the term "occurrence" to be "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

Relying on the Maryland Court of Appeals' recent decision in Sheets v. Brethren Mut. Ins. Co., 679 A.2d 540 (1996) (holding that the proper standard for determining whether a negligent act is an "ac-

2

cident" under a CGL policy is subjective -- whether the damage was unforeseen or unexpected by the insured), the district court concluded that the CGL policy Continental Insurance issued to Wellington Homes covered the damages caused by the subcontractors' faulty workmanship because the faulty workmanship amounted to an "occurrence" as defined by the policy. The court concluded that such damages were neither intended nor expected by Wellington Homes and that, therefore, under the subjective standard in Sheets, such damages were caused by an "accident" as defined by the policy.

On appeal, Continental Insurance argues that Sheets does not apply because the damages in Sheets resulted from negligent misrepresentation, whereas the loss here resulted from faulty workmanship amounting to a breach of warranty and violation of the state Consumer Protection Act. Relying on the post-Sheets decision in Lerner Corp. v. Assurance Co. of America, 707 A.2d 906 (Md. App. 1998), which interpreted Sheets in a context more closely analogous to that before us, Continental Insurance argues that the repair and replacement costs for the faulty workmanship are economic losses resulting from failure to satisfy a contractual bargain and thus are not losses covered by the CGL policy. It argues that CGL policies are not intended as surety bonds that insure contractual obligations and that to order Continental Insurance to pay for the repairs would convert its policy into a performance bond, which was never intended by the parties. We agree.

In Sheets, the court was simply concerned that an objective standard for defining the term "accident" in a CGL policy, rather than a subjective standard, would create an anomalous situation where insurance policies would cover only damages for which an insured would never be legally liable under general principles of tort law -- those damages that are not objectively foreseeable. Thus, although the court expressly disapproved those cases relying on an objective viewpoint test for defining "accident," it neither implied nor expressed any intention to undermine or fundamentally alter the established general nature of CGL policies and the risks that they were meant to cover. See, e.g., Woodfin Equities Corp. v. Harford Mut. Ins. Co., 678 A.2d 116, 128 (Md. App. 1996) (stating that "CGL policy coverage compensates for physical damage to the property of others, and not for an insured's contractual liability because the product or completed work supplied by the insured is not that for which the damaged third party

3

bargained" (citation omitted)), <u>overruled on procedural grounds by</u> 687 A.2d 652 (Md. 1997); <u>Century I Joint Venture v. United States Fidelity & Guar. Co.</u>, 493 A.2d 370, 375 (Md. App. 1985) (explaining that in a CGL policy "[t]he risk intended to be insured is the possibility that the goods, products or work of the insured, once relinquished or completed, will cause bodily injury or damage to property other than to the product or completed work itself . . ." (internal quotation marks and citation omitted)); <u>see also</u> Robert Franco, Insurance Coverage for Faulty Workmanship Claims Under Commercial General Liability Policies, 30 <u>Tort & Ins. L.J.</u> 785, 785-87 (1995) (observing that because poor performance is merely a cost of doing business, it falls outside the scope of CGL coverage, which "does not serve as a performance bond, nor does it serve as a warranty of goods and services"). Thus, a CGL policy compensates for tort liability for damage to the property of others and not for the insured's contractual liability. If the court in <u>Sheets</u> had intended to effect a revolution in the generally accepted understanding of CGL policies, it surely would have been more explicit than simply holding that the test for defining accident is a subjective one, as opposed to an objective one.

We believe that the proper interpretation of <u>Sheets</u> is revealed by the Maryland Court of Special Appeals' subsequent decision in <u>Lerner</u>, which interpreted <u>Sheets</u>. In <u>Lerner</u>, the court considered losses occasioned by faulty workmanship and concluded that such losses were not the result of an "accident" as used in the CGL policy. The court observed:

> In determining if there is a covered accident, the <u>Sheets</u> analysis directs our attention to the nature of the damages -- do they represent an expected or foreseen event? If the damages suffered relate to the satisfaction of the contractual bargain, it follows that they are not unforeseen. In other words, and in the context of this case, it should not be unexpected and unforeseen that, if the Building delivered does not meet the contract requirements of the sale, the purchaser will be entitled to correction of the defect. This, we believe, would be the expectation and understanding of the reasonably prudent lay purchaser of a CGL policy. On the other hand, if the defect causes unrelated and unexpected personal injury

4

or property damage to something other than the defective object itself, the resulting damages, subject to the terms of the applicable policy, may be covered.

Lerner, 707 A.2d at 912.

Likewise, in this case, we conclude that the losses claimed from the failure of Wellington Homes' subcontractors to use primer paint, as contractually obligated, and to carry out other similar obligations were not "unexpected or unforeseen." Because the breach of a duty to perform construction work properly is not an "accident," as covered by a CGL policy, Continental Insurance owes Wellington Homes no coverage. See id.; United States Fire Ins. Co. v. Milton Co., 35 F. Supp.2d 83 (D.D.C. 1998) (interpreting Sheets and holding that "occurrence" as used in CGL policy does not cover the normal, expected consequences of poor workmanship).

For the foregoing reasons, we reverse the judgment of the district court.

REVERSED

5