**HARBOR COURT ASSOCIATES,**
**et al., Plaintiffs,**

**v.**

**KIEWIT CONSTRUCTION COMPANY,**
**et al., Defendants.**

**Nos. Civ.A. MJG–96–3400, MJG–97–3316.**

United States District Court,
D. Maryland.

April 24, 1998.

---

Douglas L. Patin, Andrew Bramnick, Michael S. Koplan, Spriggs & Hollingsworth, Washington, D.C., for Kiewit Construction Co. & Peter Kiewit Sons Co.

John King, King & Attridge, Rockville, MD, Michael D. Berman, Kaplan, Heyman, Greenberg, Engelman & Belgrad, P.A., Baltimore, MD, Herman Fussell, Shapiro, Fussell, Wedge, Smotherman & Martin, LLP, Atlanta, GA, for SMI–Owen Steel Company, Inc.

John H. Young, The Sherman R. Smoot Corp., Falls Church, VA, Kenneth W. Curtis, Surovell, Jackson, Collen & Dugan, Fairfax, VA, for Smoot Company and Smoot Corp. of D.C.

Robert N. Kelly, M. Elizabeth Medaglia, Mark A. Goodin, Jackson & Campbell, P.C., Washington, D.C., for National Union Fire Insurance Co. of Pittsburgh, PA.

John P. McKenna, Jr., O'Malley, Miles, Nylen & Gilmore, Calverton, MD, for American Motorists Insurance Co.

Margaret Ward, Semmes, Bowen & Semmes, Towson, MD, for Republic Insurance Co.

Robert L. Ferguson, Jr., Ferguson, Schetelich, Heffernan & Murdock, P.A., Baltimore, MD, for Aetna Casualty & Surety Company.

John C. Hayes, Jr., Robert F. Reklaitis, Laurin H. Mills, Nixon Hargrave Devans & Doyle, Washington, D.C., for Employers Insurance of Wausau.

GARBIS, District Judge.

The Court has before it three motions filed with regard to the duty to defend of American Motorists Insurance Company, three motions to dismiss relating to coverage filed by Wausau Insurance Companies, and the materials submitted by the parties relating thereto. The Court has held a hearing and has had the benefit of the arguments of counsel.

As discussed herein, the central issue presented in each motion is the definition to be used for the word "expected" in the context of a comprehensive general liability policy insuring against property damage caused by

an "occurrence." In the policy at issue [1], the word "occurrence" is defined [2] as "a happening ... which results ... in property damage [not] expected ... from the standpoint of the insured."

The Court holds that, in the context of a construction project, the word "expected" refers to damages for which an insured would be liable in any event, irrespective of fault, because of its contractual obligations to construct its product. Further, the "product" of an insured is the structure or portion thereof that the insured has contracted to provide. Accordingly, the product of a general contractor would be the entire project, e.g. an entire building. The product of an electrical subcontractor would be the electrical system that the subcontractor was engaged to provide. Damage to something other than the insured's own product would be "unexpected." Accordingly, the Court holds that, in view of the Plaintiffs' claims in this case, (1) the general contractor has no potential insurance coverage and, therefore, is not entitled to a defense by the insurer, but (2) the steel and masonry subcontractors have some potential coverage so that the insurer has a duty to provide them with a defense.

## I. BACKGROUND

### A. The Underlying Case [3]

This case arises out of the construction of the Harbor Court Complex located near the Inner Harbor in Baltimore, Maryland. The Harbor Court Complex is a multi-unit, twin 28 story high-rise structure containing residential units, a hotel, an office complex, a health club, and a parking garage.

Plaintiffs Harbor Court Associates ("HCA") and Murdock Development Company [4] ("Murdock") were the developers of the Harbor Court Complex. HCA owns the Harbor Court Complex with the exception of the sixth through twenty-eighth floor of the

condominium tower. The owners of the units of the Harbor Court Condominium are collectively represented, with regard to the common elements of the condominium, by Plaintiff The Council of Unit Owners ("the Council").

Defendant Kiewit Construction Company ("Kiewit–General") is a general contractor. Defendant The Sherman R. Smoot Company, Inc. ("Smoot–Masonry") is engaged in the construction masonry business. Defendant SMI–Owen Steel Company, Inc.[5] ("Owen–Steel") is engaged in the construction steel trade.

In September 1983, Kiewit–General and Murdock entered into a contract for the construction of the Harbor Court Complex. Kiewit–General was to function as the project's general contractor. Subsequently, on July 30, 1984, Murdock assigned its contract with Kiewit–General to HCA.

On or about January 27, 1984, Kiewit–General entered into a subcontract with Owen–Steel in which Owen–Steel agreed to provide structural steel and metal floor deck work to the Harbor Court project. Owen–Steel did not agree to perform any work on the garage or hotel parts of the Complex. In addition, Owen–Steel contractually obligated itself to indemnify Kiewit–General and Murdock against claims brought against them because of Owen–Steel's failure to adequately perform its obligations under the subcontract.

In July of 1984, Kiewit–General entered into a subcontract with Smoot–Masonry wherein Smoot–Masonry agreed to perform all necessary masonry work on the Complex. Smoot–Masonry similarly agreed to indemnify Kiewit–General and Murdock against any damages as a result of Smoot–Masonry's breach of its obligations.

According to the Plaintiffs, the Harbor Court Complex currently suffers from major

---

1. The AMICO policy is the primary policy at issue.

2. As here relevant.

3. The following statement of facts is a summary to provide general background relevant to the instant motion.

4. Murdock is the Managing General Partner of HCA. The two entities will be collectively referred to "HCA/Murdock."

5. At the time that the construction of Harbor Court was being done, SMI–Owen Steel was known as "Owen Steel Company."

structural problems. Plaintiffs allege that there are defects in the masonry, steel erection system, water drainage system, and the expansion joints of the Complex. These defects create the risk that portions of the Complex's brick veneer will become detached and fall to the ground. Apparently, bricks have already fallen on several occasions, and the brick veneer has experienced, *inter alia,* cracking, distress, buckling, and failure in several locations.

Because of these alleged defects in the design and construction of Harbor Court, on September 20, 1996, HCA and Murdock filed suit against Kiewit–General in the Circuit Court for Baltimore City, Maryland. The Council filed a related suit against Kiewit–General in the Circuit Court for Baltimore City that same day. On October 29, 1996, Kiewit–General removed both of those cases to this Court.

On January 21, 1997, HCA, Murdock, and the Council filed a Consolidated Amended Complaint in this Court naming Kiewit–General, Smoot–Masonry, and Owen–Steel as defendants. The eleven count Consolidated Amended Complaint asserts claims of negligence, breach of contract, and indemnification against each defendant.

### B. *The Insurance Issues*

Pursuant to its contract with Kiewit–General, HCA/Murdock promised to procure "wrap-up" insurance for the general contractor and the subcontractors on the Harbor Court project in the amount of $100,000,000. In January of 1984, Murdock's insurance agent, Pacific Plaza Insurance Services, Inc. ("Pacific Plaza"), put together an insurance program covering Kiewit–General, Smoot–Masonry, Owen–Steel, and the other subcontractors. Murdock, Kiewit–General, and the subcontractors were all named insureds under the same policies.

Third Party Defendant American Motorists Insurance Company ("AMICO") provided primary third-party commercial general liability ("CGL") coverage, in the amount of $1,000,000 per occurrence, for the period from January 3, 1984 through October 1, 1986. AMICO also provided "completed operations" coverage, in the amount of $1,000,-000 per occurrence, for the period from October 1, 1986 through October 1, 1989.

Substantial excess CGL coverage for the Project was initially provided by Mission National Insurance Company ("Mission"). Mission subsequently went into bankruptcy and was forced to cancel its coverage.

As a result, Third Party Defendants Wausau Insurance Companies ("Wausau"), National Union Fire Insurance Company of Pittsburgh, PA ("National Union"), Republic Insurance Company ("Republic"), and Aetna Casualty & Surety Company ("Aetna") were brought in to provide excess CGL coverage. Collectively, the excess coverage was placed for the period from February 10, 1985 through October 1, 1986. Some of the policies also provided for completed operations coverage.

All of the excess insurance policies "follow the form" of the AMICO primary policy, meaning that, except with respect to policy limits and time period, the excess policies incorporate the terms of the underlying AMICO policy.[6]

Kiewit–General, Smoot–Masonry, and Owen–Steel have each filed a Third Party Complaint against AMICO and the excess insurers asserting (1) that AMICO has a duty to defend them in the underlying litigation and (2) that AMICO and the excess insurers have duties to indemnify them against any damages that they may be forced to pay because of the underlying litigation.[7]

### C. *The Pending Motions*

Kiewit–General, Smoot–Masonry, and Owen–Steel now move for partial summary judgment against AMICO, arguing that AM-

---

6. Except to the extent that an excess insurer's policy contains a provision explicitly in conflict with the AMICO policy. The parties have not identified any differences in the policies that are material to the present discussion.

7. There are also claims of negligence and misrepresentation against Pacific Plaza and claims for breach of contract against HCA/Murdock in the event that it is decided that the insureds are not covered under the pertinent insurance policies.

ICO has a duty to defend them in the underlying litigation. Also pending are Wausau's motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) directed against the Third Party Complaints filed by Kiewit–General, Smoot–Masonry, and Owen–Steel.

## II. *DISCUSSION*

### A. *The Duty to Defend*

██ Under Maryland[8] law, the obligation of an insurer to defend its insured is determined by the allegations in the underlying claims against the insured. If the plaintiffs in the underlying case "allege a claim covered by the policy, the insurer has a duty to defend." *Brohawn v. Transamerica Ins. Co.*, 276 Md. 396, 347 A.2d 842, 850 (1975). In addition, even if the plaintiffs in the underlying case do not "allege facts which clearly bring the claim within or without the policy coverage, the insurer still must defend if there is a potentiality that the claim could be covered by the policy."[9] *Id.* If the coverage issue depends upon policy language which is ambiguous,[10] the Court "must resolve that ambiguity in favor of the insured before it can conclude that the insurer has or had an obligation to provide a tort defense." *St. Paul Fire & Marine Ins. Co. v. Pryseski*, 292 Md. 187, 438 A.2d 282, 286 (1981).

Thus, the Court must examine the terms of the insurance policy at issue to determine the scope and limitations of its coverage and then determine whether the allegations in the Consolidated Amended Complaint would potentially be covered under the policy. *Aetna Cas. & Sur. Co. v. Cochran*, 337 Md. 98, 651

A.2d 859, 862 (1995); *Chantel Assoc. v. Mount Vernon Fire Ins. Co.*, 338 Md. 131, 656 A.2d 779, 784 (1995).

### B. *The Policy Terms*

The AMICO policy[11] at issue provides that AMICO

> will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of ... *property damage to which this insurance applies, caused by an occurrence,* and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such ... property damage, even if the allegations of the suit are groundless, false or fraudulent. . . .

AMICO Policy Part 7 (emphasis added). Murdock, Kiewit–General, Smoot–Masonry, and Owen–Steel are all insureds under the same policy. *Id.* at 13. Under the policy, the "insurance afforded applies separately to each insured against whom claim is made or suit is brought, except with respect to the limits of the company's liability." AMICO Policy Jacket at 1. Thus, the Court must examine each insured's situation individually in order to determine if a particular insured is owed a duty to defend.

#### 1. *"Property Damage"*

██ Property damage is defined, in pertinent part, as "physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom."

---

8. The parties agree that Maryland law applies to this case.

9. Thus, in the instant case, if the Court concludes that AMICO has a duty to defend Kiewit–General, Smoot–Masonry, and/or Owen–Steel, it cannot logically conclude that there is no set of facts under which Wausau would be required to provide coverage to Kiewit–General, Smoot–Masonry, and/or Owen–Steel. Dismissal under Federal Rule of Civil Procedure 12(b)(6) is inappropriate unless it "appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Court will therefore focus its discussion on whether or not AMICO has a duty to defend Kiewit–General, Smoot–

Masonry, and/or Owen–Steel against the claims in the underlying Consolidated Amended Complaint. Necessarily, the Court will also be determining whether there is any set of facts under which the insureds could recover from Wausau.

10. After consideration of any extrinsic or parol evidence bearing on the parties' intent which might eliminate the ambiguity. *See, e.g., W.M. Schlosser Co., Inc. v. Insurance Co. of North Am.*, 325 Md. 301, 600 A.2d 836, 838 (1992) (quoting *Cheney v. Bell Nat. Life*, 315 Md. 761, 556 A.2d 1135 (1989)).

11. As discussed *supra*, the policy issued by Wausau "follows the form" of the AMICO policy and thus has identical terms.

AMICO Policy Jacket at 1. The Consolidated Amended Complaint alleges numerous times that Harbor Court's "brick veneer has experienced, *inter alia,* cracking, distress, buckling and failure in several locations." *See, e.g.* Consolidated Amended Complaint ¶ 16 (negligence claim vs. Kiewit–General), ¶ 25 (negligence claim vs. Smoot–Masonry), ¶ 32 (negligence claim vs. Owen–Steel). The terms of an insurance contract are to be construed according to their " 'customary, ordinary, and accepted meaning.' " *Chantel Assoc. v. Mount Vernon Fire Ins. Co.,* 338 Md. 131, 656 A.2d 779, 784 (1995) (quoting *Lloyd E. Mitchell, Inc. v. Maryland Cas.,* 324 Md. 44, 595 A.2d 469, 475 (1991)). Under the ordinary meaning of the policy terms, the alleged damages to the brick veneer constitute "physical injury to . . . tangible property." [12]

### 2. "Which Occurs During the Policy Period"

■ To be within the policy at issue, any property damage must have occurred within the policy period. There is coverage provided by the AMICO policies during the con-

struction phase from January 3, 1984 through October 1, 1986, and during the three year "completed operations" period from October 1, 1986, through October 1, 1989.

■ The Consolidated Amended Complaint does not specify when the damage to the brick veneer first occurred.[13] Thus, under *Brohawn* and its progeny, the claims for property damage against the insureds potentially fall within one of the policy periods, thereby triggering AMICO's duty to defend.[14] *See, e.g. Brohawn v. Transamerica Ins. Co.,* 276 Md. 396, 347 A.2d 842, 850 (1975) ("Even if a tort plaintiff does not allege facts which clearly bring the claim within or without the policy coverage, the insurer still must defend if there is a potentiality that the claim could be covered by the policy."); *Aetna Cas. & Sur. Co. v. Cochran,* 337 Md. 98, 651 A.2d 859, 866 (1995).

### 3. "Caused by an Occurrence"

Under the Policy, the word "occurrence" is defined as "an accident [15] or a happening or

---

**12.** In an opinion by Judge Motz of this Court, it was noted that " '[p]roperty damage' has been defined to exclude defective work performed by the insured." *Reliance Ins. Co. v. Mogavero,* 640 F.Supp. 84, 86 (D.Md.1986) (citations omitted). In *IA Constr. Corp. v. T & T Surveying, Inc.,* 822 F.Supp. 1213 (D.Md.1993), Judge Motz limited his holding in *Mogavero.* He held that while the phrase "property damage" had been construed to exclude defective work performed by the insured himself, the term does not exclude damages due to the consequential effects which an insured's poor workmanship had on the work of other contractors. *Id.* at 1214–15.

The holdings of *Mogavero* and *IA Construction* do not depend on the construction of the term "property damage." Rather, in each case, it was held that there had been no "occurrence" as that term was then interpreted by the Maryland Court of Appeals. *Mogavero,* 640 F.Supp. at 86–87; *IA Construction,* 822 F.Supp. at 1215.

To the extent that the parties argue that *Mogavero* and *IA Construction* mandate a finding that there has been no "property damage" in this case, the undersigned judge must note a respectful disagreement with the *Mogavero* rationale on this point. In this Court's view, if defective workmanship is not covered by a comprehensive general liability policy, that would be because the damages were not "caused by an occurrence" or because a policy exclusion applied. Coverage

would not turn on whether there was "property damage" in the abstract.

In any event, the plain language of the policy at issue defines property damage as "physical injury to . . . tangible property." Such injury is present in the instant case. Therefore, coverage is not barred due to any absence of "property damage."

**13.** The pertinent inquiry for determination of potential coverage herein is when the property damage first occurred, not when such damage was actually discovered or manifested. *Harford County v. Harford Mut. Ins. Co.,* 327 Md. 418, 610 A.2d 286, 294–95 (1992). As noted, the Consolidated Amended Complaint is silent on this point. While the burden is on the insured to demonstrate that property damage occurred within the coverage of the policy, an insurer must defend its insured if there is a potential of liability under the policy. *Id.* at 295 n. 6.

**14.** Assuming that there is no other reason that prevents triggering of the duty to defend.

**15.** In *Sheets v. Brethren Mut. Ins. Co.,* 342 Md. 634, 679 A.2d 540 (1996), the Maryland Court of Appeals redefined the word "accident" for purposes of insurance contracts to include a negligent act that causes damage that is unforeseen or unexpected by the insured. *Id.* at 548. Because

event or a continuous or repeated exposure to conditions which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured." AMICO Policy Endorsement 8.

The ordinary and plain meaning of the word "happening" is quite broad. Under its ordinary usage, a "happening" is "something that happens." Webster's New World Dictionary (3d college ed.1988). In this case, "something," i.e. the damage to the brick veneer, has "happened." Thus, the inclusion of the word "happening" in the definition of "occurrence" does little, if anything, to limit its scope.

However, the Policy further requires that the "happening" result in "property damage neither expected nor intended from the standpoint of the insured." There is no contention that the damages to the brick veneer in this case were intended by anyone. Therefore, the Court's focus is on the requirement that the property damage alleged not be "expected ... from the standpoint of the insured."

In *Lerner Corp. v. Assurance Co. of Am.*, 120 Md.App. 525, 707 A.2d 906 (1998), the Maryland Court of Special Appeals addressed the issue of, in the construction context, what damages are "expected" under the terms of a CGL policy. In *Lerner*, the plaintiffs were a developer and the firm that provided the developer with construction management services. They built and sold a building to the United States. The contract of sale between the plaintiffs and the United States provided that acceptance of the work performed under the contract was deemed to be final except as to latent defects. After the building was sold, the General Services Administration ("GSA") discovered latent defects in the building's exterior facade. The plaintiffs undertook to repair the facade and then sued their comprehensive general liability insurers for indemnity.

The CGL policy at issue in Lerner, like the policy in the instant case, defined "occurrence" to require that any resulting property damage be "neither expected nor intended from the standpoint of the Insured." *Lerner*, *Id.* at 909. After a thorough review of the law in this area, the Court of Special Appeals concluded that "[i]f the damages suffered relate to the satisfaction of the contractual bargain, it follows that they are not unforeseen. In other words, and in the context of this case, it should not be unexpected and unforeseen that, if the Building delivered does not meet the contract requirements of the sale, the purchaser will be entitled to correction of the defect." [16] *Id.* at 912. The *Lerner* court went on to hold, however, that "if the defect causes unrelated and unexpected ... property damage to something *other than the defective object itself*, the resulting damages, subject to the terms of the applicable policy, may be covered. For example, if a collapse of the veneer had injured the user of the facility or damaged property other than the veneer itself, these may well be covered." *Id.* (emphasis added).

In the context of the instant case, the word "expected" is construed to refer to

---

of the broader definition of "occurrence" in the policy at issue in this case, it is unnecessary to determine if the property damage at issue was caused by an accident. The issue of whether the property damage was unexpected from the standpoint of the insured, however, will be discussed infra because of the requirement in the policy that such damages be "neither expected nor intended from the standpoint of the insured."

**16.** It is immaterial that the Consolidated Amended Complaint asserts claims against Kiewit–General, Smoot–Masonry, and Owen–Steel on theories of negligence and indemnification, in addition to breach of contract. The *Lerner* court stated that "we hold that the damages claimed, *regardless of the form of the cause of action* that GSA might have maintained against the Insureds to repair the faulty construction of the facade, were not covered by the CGL policies issued to the Insureds and that the Insurers were not obligated to indemnify the Insureds for the costs incurred related to the repair of the Building's damaged facade." *Lerner*, 707 A.2d at 909 (emphasis added). While the issue is not presently before the Court, this Court has previously held that when the relationship between parties is purely contractual and the heart of a plaintiff's complaint is that a defendant did not adequately perform its contract with plaintiff, no tort duties independent of the contractual duties between the parties arise. *Martin Marietta Corp. v. International Telecommunications Satellite Org. (INTELSAT)*, 763 F.Supp. 1327, 1331–32 (D.Md.1991), *aff'd in part and rev'd in part* 991 F.2d 94 (4th Cir.1992).

damages for which an insured would be liable in any event, irrespective of fault, because of its contractual obligations to construct its product. Under *Lerner,* contractors, when they agree to construct a building, expect that they will have to erect the building in a proper manner. They further expect that if they do not do so, they will have to repair any defects in their work so as to "deliver" the product they promised to provide. Accordingly, to the extent that the Consolidated Amended Complaint asserts claims against Kiewit–General, Smoot–Masonry, and Owen–Steel for the cost of repairing the work called for in each of their respective construction contracts, any property damages claimed were "expected" and thus not caused by an occurrence as that term is defined in the CGL policy. Damages to property other than the insured's work or product would be "unexpected" and, thus, caused by an occurrence.[17]

■ Kiewit–General contracted with HCA/Murdock to build Harbor Court. *See, e.g.* Consolidated Amended Complaint ¶¶ 10, 14. The entire project was thus Kiewit–General's responsibility. *Id.* ¶ 14. The scope of Kiewit–General's construction contract with HCA/Murdock was to erect a complete, non-defective building. All of the work done to construct Harbor Court was either done by Kiewit–General or by a subcontractor for Kiewit–General. Under *Lerner,* any defects in any part of the building would thus be "expected" by Kiewit–General, irrespective of whether the actual physical work was performed by Kiewit–General or one of Kiewit–General's subcontractors. Therefore,

with regard to Kiewit–General, the alleged damages to the brick veneer of Harbor Court were not caused by an occurrence. Accordingly, there is no potentiality of coverage for Kiewit–General for the asserted damages and, consequently, no duty to defend. The only damages sought from Kiewit are for the cost of repairing Harbor Court itself. Plaintiffs have not alleged in their Consolidated Amended Complaint that anything other than the building itself has been damaged. Even the indemnification counts do not allege injury or damage to anything other than the building itself. Rather, they seek declaratory judgments that *if* any such injuries or damages occur, there *would be* indemnification obligations on the part of the Defendants.

■ However, some of the damages being sought from Owen–Steel and Smoot–Masonry were caused by an occurrence. With regard to Owen–Steel, the Plaintiffs are not seeking merely the repair of any alleged defects in the steel. Rather, Owen–Steel's allegedly negligent performance in furnishing and erecting the structural steel and metal floor deck work is claimed to have damaged the masonry work performed by Smoot–Masonry, leading to the defects in the brick veneer. *See, e.g.* Consolidated Amended Complaint 32. Therefore, while damages to the steel itself would not have been caused by an occurrence because such damages were expected by Owen–Steel, damages to the bricks were unexpected and thus caused by an occurrence.[18] Thus, while there is no coverage for the cost of repairing the alleg-

---

**17.** All parties agree that, for instance, if a brick were to fall from Harbor Court and strike a parked car below, there would be coverage for the damages to the car subject to the pertinent terms, conditions and exclusions of the policy. *Lerner* clarifies that this is because such damages are not "expected" by the insureds. The Court sees no principled difference between damages caused by defective workmanship to a third party's vehicle (which all agree would be covered property damage) and damages caused by a subcontractor's poor workmanship to a part of a building other than the part on which the subcontractor worked. In both cases, there is property damage to something other than the product supplied by the insured.

**18.** AMICO's argument that the indemnification provision in Owen–Steel's subcontract indicates

that damages to the bricks were also expected by Owen–Steel proves too much. Owen–Steel promised to indemnify Murdock and Kiewit–General for "any and all claims, suits or liability for damages to property ... on account of any act or omission of the Subcontractor, or any of his officers, agents, employees or servants." Consolidated Amended Complaint ¶ 12. AMICO reads this provision as demonstrating that Owen–Steel "expected" its work to cause damages and therefore, those damages are not covered. Such an interpretation would render the insurance policy at issue meaningless. No property damages, to anyone's property, would be covered. This is despite the universal agreement that CGL policies cover injuries to third parties.

edly defective steel, there could be coverage for the damages that the steel caused to the brick veneer.[19]

As to Smoot–Masonry, while the Consolidated Amended Complaint is less than precise, it appears that the Plaintiffs are indeed seeking to hold Smoot–Masonry liable for not only the cost of repairing the allegedly defective masonry work, but also for the damages that the brick work allegedly caused to the steel installed by Owen–Steel. Thus, while there is no coverage for the cost of repairing the allegedly defective brick, there could be coverage for the damages that the brick caused to the structural steel.[20]

In sum, the Court concludes that, as to Kiewit–General, there has not been alleged property damage *caused by an occurrence.* Therefore, there is no duty to defend Kiewit–General, and consequently, no set of facts under which there could be coverage.[21] As to Owen–Steel and Smoot–Masonry, there has been alleged property damage caused by an occurrence. Therefore, as to Owen–Steel and Smoot–Masonry, the Court must consider the various exclusions in the CGL policy.

### 4. The "Insured's Product" Exclusion

Under exclusion (n), the insurance provided by the granting language does not apply "to property damage to the named insured's products arising out of such products or any part of such products." "Named insured's products" is defined in pertinent part as "goods or products manufactured,

sold, handled or distributed by the named insured or by others trading under his name." AMICO Policy Jacket at 1.

Owen–Steel's product was the steel and metal that it provided. Smoot–Masonry's product was the brick work. For the purposes of discussion, the Court will assume that Owen–Steel and Smoot–Masonry either "manufactured, sold, handled or distributed" the steel and bricks for purposes of the insurance policies at issue. Even so, this exclusion does not bar AMICO's duty to defend Owen–Steel and Smoot–Masonry.

As discussed above, Owen–Steel and Smoot–Masonry cannot seek coverage (or defense) for a claim for the cost of repairing the damages to their products, i.e., the steel and bricks, respectively. Rather, Owen–Steel seeks coverage (and a defense) for the Plaintiffs' claims that defects in Owen–Steel's product caused damage to portions of Harbor Court not constituting Owen–Steel's product, i.e., the brick veneer, which is Smoot–Masonry's product and/or work. Smoot–Masonry, in turn, seeks coverage (and a defense) for the Plaintiffs' claims that defects in Smoot–Masonry's product caused damage to other parts of Harbor Court, e.g., the structural steel. Plaintiffs' claims against Owen–Steel and Smoot–Masonry for the damages which their products caused to the work of others are not excluded by the "insured's product" exclusion. *See, e.g., Apache Foam Prods. Div. v. Continental Ins. Co.,* 139 A.D.2d 933, 528 N.Y.S.2d 448, 449 (N.Y.A.D.1988).

**19.** If, for instance, it were proven that defective steel caused the bricks (whether otherwise defective or non-defective) to crack and fail.

**20.** As discussed *supra* in note 18, the presence of an indemnification provision in Smoot–Masonry's subcontract does not mean that any damages which the brick caused to the steel would be "expected."

**21.** Nor can Kiewit–General extract "contractual liability" coverage for the claims asserted against it in this case from exclusion (a) of the CGL policy. Exclusion (a) provides that the insurance provided does not apply "to liability assumed by the insured under any contract or agreement except an incidental contract." The insureds argue that under exclusion (a), (1) liability assumed by the insured under an incidental contract is affirmatively covered and (2) that there is liability assumed under an incidental contract (as

that is defined) alleged in this case. The fundamental flaw with this argument is that the phrase "except an incidental contract" only *limits the scope of the exclusion.* The limitation does not create coverage. It is fundamental that " 'exclusion clauses do not grant coverage; exclusions limit the scope of coverage granted in the insuring agreement.' " *Century I Joint Venture v. United States Fidelity & Guar. Co.,* 63 Md.App. 545, 493 A.2d 370, 377 (1985); *see also Reliance Ins. Co. v. Mogavero,* 640 F.Supp. 84, 87 (D.Md. 1986) ("It is a well-established principle that an exclusionary clause cannot itself create coverage."). Therefore, because (as to Kiewit–General) the Court finds that there is no allegation of property damage *caused by an occurrence,* the insuring language is not triggered and there is no coverage for Kiewit–General.

The insurers' reliance on *Century I Joint Venture v. United States Fidelity & Guar. Co.*, 63 Md.App. 545, 493 A.2d 370 (1985) is misplaced. In *Century I*, the developer of a condominium building and the marketing company created by the developer were sued by the condominium owners over various defects in the condominiums allegedly resulting from faulty design and improper construction. The developer and the marketing company then filed a declaratory judgment action against their CGL insurer, arguing that the insurer had a duty to indemnify them and defend them in the underlying suit. *Id.* at 549–50, 493 A.2d 370. The CGL policy was identical in all material respects to the policy in the instant case.

The Court concluded that exclusion (n), the "insured's product" exclusion, precluded coverage. In doing so, the Court looked to the definition of "named insured's product" in the policy, a definition which is identical to that in the policy currently before the Court. The Court concluded that

> The sense and meaning of exclusion (n) is that the policy did not insure against damages to the condominium arising from defects within the building itself. Since [the developer's] business consisted of the erection of a condominium building and the sale of individual condominium units therein, under a plain and ordinary interpretation of the exclusion, a condominium unit would be included within the definition of

"products ... sold ... by the named insured."

*Id.* at 376 (alterations in original).

The instant case presents a materially different situation. While the *Century I* court held that a building was a "product," it does not necessarily follow that all of Harbor Court was *Owen–Steel's* or *Smoot–Masonry's* product. In *Century I*, the insureds were the developer and the company charged with marketing the building. Under those circumstances, it is logical to say that the entire building is a product sold by the insureds.[22]

In the instant case, Owen–Steel merely provided the structural steel to the Project. Smoot–Masonry merely provided the masonry work. The insurers have cited to no authority which states that if an insured provides one portion of a larger project, the entire project is nonetheless deemed to be that insured's "product." Indeed, the precedents hold that just the opposite is true. *See, e.g., Apache Foam Prods. Div. v. Continental Ins. Co.*, 139 A.D.2d 933, 528 N.Y.S.2d 448, 449 (N.Y.A.D.1988).[23]

In sum, the Court concludes that coverage for the claims against Owen–Steel and Smoot–Masonry (as they relate to damages to the work or product of others) are not precluded by the "insured's product" exclusion.[24]

### 5. The "Insured's Work" Exclusion

■ The insured's work exclusion is exclusion (o) of the base policy.[25] However, in this case, exclusion (o) has been replaced

---

22. Although the Court need not reach the issue, a similar reasoning could lead to the conclusion that the entire Harbor Court Complex is Kiewit–General's "product." It would then be necessary to determine if it was "manufactured, sold, handled or distributed" by Kiewit–General. Because of the Court's conclusion that any damages claimed against Kiewit–General were not caused by an "occurrence," it is not necessary to reach this issue.

23. Holding that while this exclusion precludes coverage for damage to the insured's own product that was used in roof installation, it did not preclude coverage "for property damage to the remaining portions of the roofs, involving work performed by parties other than the named insured. Exclusion (n) applied only to the insured's products and not to work performed by others." *Apache Foam*, 528 N.Y.S.2d at 449.

24. To the extent that this exclusion is ambiguous regarding whether the entire Project is to be deemed Owen–Steel's and/or Smoot–Masonry's product (and the Court is not finding that it is), the Court would resolve the ambiguity in favor of Owen–Steel and Smoot–Masonry and find that only the steel and metal work was Owen–Steel's "product" and that only the masonry work was Smoot–Masonry's "product."

25. Exclusion (o) states that the insurance provided does not apply "to property damage *to work performed by or on behalf of* the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith." (emphasis added).

by Part VI of the policy's Broad Form Comprehensive General Liability Endorsement.[26] Accordingly, the pertinent language with respect to this exclusion states that the insurance provided for property damage does not apply "with respect to the completed operations hazard and with respect to any classification stated in the policy or in the company's manual as 'including completed operations' to property damage to work performed by the named insured arising out of such work or any portion thereof, or out of such materials, parts or equipment furnished in connection therewith." AMICO Policy Broad Form Comprehensive General Liability Endorsement Part VI(A)(3) (emphasis added):

As an initial matter, because the above-quoted language "replaces" exclusion (o) and itself refers only to the completed operations period, it could be read to delete any exclusion based on damages to the insured's work prior to the completed operations period. On the other hand, one could read this language as meaning that exclusion (o) is in effect for the period prior to the completed operations period and that the above-quoted language merely modifies the exclusion during the completed operations period. However, it is not necessary to resolve this issue for purposes of the motions under consideration.

On neither view of the "insured's work" exclusion are the claims against Owen–Steel and Smoot–Masonry barred. Owen–Steel has conceded that this exclusion bars coverage for the cost of repairing the *work performed by Owen–Steel*, i.e., the structural steel. As Smoot–Masonry acknowledged at the hearing on these motions, it stands in the same position as Owen–Steel. Therefore, there is no coverage for Smoot–Masonry for the cost of repairing its work, i.e., the masonry.

Nevertheless, the claims against Owen–Steel and Smoot–Masonry are not limited (as to Owen–Steel) to the cost of repairing the steel work that Owen–Steel performed or (as to Smoot–Masonry) to the cost of repairing

the brick work that Smoot–Masonry performed. Rather, HCA/Murdock · and the Council seek compensation from Owen–Steel for the damages that Owen–Steel's steel allegedly caused to the brick work done by Smoot–Masonry and from Smoot–Masonry for the damages Smoot–Masonry's bricks allegedly caused to the steel installed by Owen–Steel. These are not damages to "work performed" by Owen–Steel and Smoot–Masonry. Therefore, these damages are not excluded by this exclusion.

### 6. The "Owned Property" Exclusion

■ The "owned property" exclusion is exclusion (k) in the CGL policy. However, it has been replaced by Part VI of the Broad Form Comprehensive General Liability Endorsement, which states, in pertinent part, that the insurance provided does not apply to damage "to property owned or occupied by or rented to the insured or ... to property held by the insured for sale or entrusted to the insured for storage or safekeeping." AMICO Policy Broad Form Comprehensive General Liability Endorsement Part VI(A)(1). AMICO argues that because HCA/Murdock is a named insured on the policy, and because HCA/Murdock was the owner of the Harbor Court complex at the time that Owen–Steel's and Smoot–Masonry's construction work was done (and continues to own much of the Complex today), this exclusion serves to bar coverage for Owen–Steel and Smoot–Masonry.

AMICO's argument fails to take into account the provision of the policy which states that the "insurance afforded applies separately to each insured against whom claim is made or suit is brought, except with respect to the limits of the company's liability." AMICO Policy Jacket at 1. It is undisputed that neither Owen–Steel nor Smoot–Masonry is, or ever has been, the owner of Harbor Court. Whether or not Murdock was the owner of the property is immaterial. Murdock's ownership does not bar coverage for any other insured. Thus, the "owned property" exclu-

---

**26.** As discussed in the Court's letter of April 9, 1998, there is an issue as to whether Endorsement 18, which deletes Part VI of the Broad Form Endorsement, is part of the policy. In accordance with the Court's discussion in the April 9 letter, for purposes of the pending motions, the Court will assume that Endorsement 18 is not in the policy.

sion does not bar coverage for claims against Owen–Steel and Smoot–Masonry.

### III. *CONCLUSION*

For the foregoing reasons:

1. Defendants/Third Party Plaintiffs Kiewit Construction Company and Peter Kiewit Sons Co.'s Motion for Partial Summary Judgment Concerning the Duty to Defend Against Third Party Defendant American Motorists Insurance Company is DENIED.

2. Defendant SMI–Owen Steel Company's Motion for Partial Summary Judgment Against Third Party Defendant American Motorists Insurance Company is GRANTED.

3. Defendants The Sherman R. Smoot Company's and The Sherman R. Smoot Corporation's Motion for Judgment on the Pleadings, or in the Alternative, for Partial Summary Judgment Against Third Party Defendant American Motorists Insurance Company is GRANTED.

4. The Motion of Third–Party Defendant Wausau to Dismiss Pursuant to Fed. R.Civ.P. 12(b)(6) [against Kiewit] is GRANTED.

5. Third Party Defendant Wausau Insurance Company's Motion to Dismiss First Amended Third Party Complaint of SMI–Owen Steel Company, Inc. is DENIED.

6. Third Party Defendant Wausau Insurance Companies' Motion to Dismiss Amended Third Party Complaint of Sherman R. Smoot Corporation and Sherman R. Smoot Company is DENIED.

7. American Motorists Insurance Company has a duty to defend SMI–Owen Steel Company, Inc. and the Sherman R. Smoot Company in the underlying suit brought by Harbor Court Associates, Murdock Development Company, and the Council of Unit Owners.