**HOTEL ROANOKE CONFERENCE CENTER COMMISSION,**
Plaintiff,

v.

**The CINCINNATI INSURANCE COMPANY, Defendant.**

No. CIV.A. 703CV00109.

United States District Court,
W.D. Virginia,
Roanoke Division.

Feb. 23, 2004.

Paul Graham Beers, Glenn Feldmann Darby & Goodlatte, Roanoke, VA, for Plaintiff.

Phillip Verne Anderson, Stephen A. Bell, Frith Anderson & Peake PC, Roanoke, VA, for Defendant.

### MEMORANDUM OPINION

WILSON, Chief Judge.

Plaintiff, Hotel Roanoke Conference Center Commission ("Commission"), brought this action in the Circuit Court of the City of Roanoke, Virginia, against the Cincinnati Insurance Company ("Cincinnati"), defendant, to recover monies the Commission paid the Hotel Roanoke ("Hotel") which the Commission claims Cincinnati should have paid under a commercial general liability policy in which the Hotel is a named insured and the Commission is an additional insured. Cincinnati removed the case to this court pursuant to 28 U.S.C. §§ 1441, 1446. The Commission is a citizen of Virginia, and Cincinnati is an Ohio corporation with its principal place of business in that state. Accordingly, there is diversity jurisdiction pursuant to 28

U.S.C. § 1332(a). Cincinnati claims that the Hotel's losses were "expected" from the standpoint of the insured and therefore excluded from coverage and has moved for summary judgment on that and other grounds. The court agrees that the losses were "expected" and therefore not covered and grants the motion.

## I. Facts

In 1995 the Commission completed construction of the Conference Center of Roanoke ("Conference Center") which was designed to be functionally integrated with the Hotel, a separately owned and operated business.[1] The Commission and the Hotel hoped the facility would attract relatively large groups of guests that needed both temporary sleeping quarters and meeting spaces.

The Commission and Hotel entered into a "Deed of Easement" which granted the Hotel appurtenant easements, exclusive use rights, and non-exclusive use rights in various areas of the Conference Center. Cincinnati provided insurance coverage under a commercial general liability policy and an excess umbrella policy. The policies listed the Hotel as a named insured and the Commission as an additional insured.

During construction, contractors used steel slag as a fill material beneath the Conference Center's foundation. Slag is a bi-product of steel production that hydrates and expands over prolonged periods. Several years after construction, the slag began to hydrate and caused the foundation to crack. Continued movement of the foundation posed a serious risk to the Conference Center as well as its guests and employees.

The Commission concluded that it must remove the slag. During the repairs, Jan-

uary–May, 2001, the Conference Center was essentially closed, as were sixty guest bedrooms and a restaurant located in the Hotel. Consequently, the Hotel lost significant revenues from cancelled bookings.

The Hotel demanded that the Commission indemnify it under the Deed of Easement for the lost revenues and other expenses incurred as a result of the repair project. The Commission notified Cincinnati of the Hotel's demand, but Cincinnati denied coverage, citing policy language excluding from coverage damages expected from the viewpoint of the insured in addition to other defenses. The Commission then agreed to pay the Hotel $678,591.00 in exchange for a release from liability, and the Commission in turn brought this suit seeking reimbursement. The action is now before the court on Cincinnati's motion for summary judgment.

## II. The Policy

The following are the relevant provisions of the commercial general liability coverage policy:

### SECTION I–COVERAGES

### COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement.

   a.. [Cincinnati] will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.....

   b. This insurance applies to "bodily injury" and property damage only if:

---

1. The Hotel Roanoke is owned and operated by the Hotel Roanoke, LLC. For the sake of simplicity, this opinion will not distinguish between the Hotel Roanoke and the Hotel Roanoke, LLC.

(1) The "bodily injury" or "property damage" is caused by an "occurrence" . . .

2. Exclusions.

This insurance does not apply to:

a. "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. . . .

## SECTION V–DEFINITIONS. . . .

9. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

Similarly, the umbrella policy states that Cincinnati "will pay on behalf of the Insured the ultimate net loss for occurrences during the policy period . . . or for occurrences covered by this policy which are either excluded or not covered by underlying insurance . . ." The umbrella policy defines occurrence to mean "an accident, or a happening or event, or a continuous or repeated exposure to conditions which occurs during the policy period which unexpectedly or unintentionally results in personal injury, property damage or advertising liability."

In 1995, Cincinnati issued a "Certificate of Insurance" and an "Addendum to Certificate of Insurance" ("Certificate").[2] The Certificate identifies the Commission as an "Additional Insured" and states " Subject to policy terms the insurance has the following endorsements effective 7–1–95: . . . Cross-liability and contractual liability for indemnification obligations set forth in the Deed of Easement."

## III. Analysis

The policy clearly excludes from coverage property damage "expected" from the standpoint of the insured, and the better reasoned decisions conclude that when the insured poorly performs its contractual obligations damaging only the insured's work

or product, the resulting contractual liability is "expected" under the terms of its commercial general liability policy. Because the damages in the present case were caused by the Commission defective performance under the Deed of Easement and limited to the Conference Center, the damages were expected by the Commission, and the court grants Cincinnati's motion for summary judgment.

Because this court is exercising diversity jurisdiction, it applies Virginia law. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). This requires the court to predict how the Supreme Court of Virginia would decide the issue. In making that prediction this court "may seek guidance from all available sources, including decisions from other jurisdictions." *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.* 174 F.3d 411, 418 (4th Cir.1999). *American Fire & Casualty Insurance, Co. v. Doverspike,* 36 Va. Cir. 263 (Va. Cir. Ct.1995), a Virginia case addressing whether damages resulting from the insured's poor performance of a construction contract is covered by a commercial general liability policy, provides some guidance.

■ In *Doverspike,* the American Fire &. Casualty Insurance, Co., ("American Fire"), issued to the Doverspikes a commercial general liability insurance policy. *Id.* at 263, 1995 WL 1055839. Joseph Hooks and Robert Kabel sued the Doverspikes for poor performance of a home renovation contract, and the Doverspikes made a claim against American Fire for coverage. *Id.* The court reasoned that

> [d]efendants argue that the poor performance by the Doverspikes on the renovation contract amounts to an accident because the Doverspikes did not intend such poor performance. Clearly that

2. The Certificate was actually issued by a general agent of Cincinnati.

argument fails. The insurance policy issued to the Doverspikes is a general liability policy covering accidents causing bodily injury or property damage. It is not a performance bond. It does not cover poor workmanship. It does not provide coverage for the types of claims made by Hooks and Kabel against the Doverspikes.

*Id.* at 264, 1995 WL 1055839. Although no other Virginia cases directly address this issue,[3] a wealth of case law from other states supports the conclusion that damages resulting from the insured's defective performance of a contract and limited to the insured's work or product is not covered by a commercial general liability policy because it is "expected" from the standpoint of the insured.

The reasoning of *Harbor Court Associates v. Kiewit Construction Co.*, 6 F.Supp.2d 449 (D.Md.1998) is particularly persuasive. In *Harbor Court Associates*, a development company entered into a contract with a general contractor for the construction of a building. *Id.* at 452. Due to the defective performance of two subcontractors, the building suffered major structural problems and the development company sued the general contractor for breach of contract. *Id.* at 452–53. The general contractor in turn sued its liability insurer for breach of the insurer's duty to defend and indemnify. *Id.* at 453. The court, interpreting language nearly identical to the policy in the present case,[4] reasoned:

> [i]n the context of the instant case, the word "expected" is construed to refer to damages for which an insured would be liable in any event, irrespective of fault, because of its contractual obligations to construct its product.... [C]ontractors, when they agree to construct a building, expect that they will have to repair any defects in their work so as to "deliver" the product they promised to provide. Accordingly, to the extent that the [complaint] asserts claims against [the contractors] for the cost of repairing the work called for in each of their respective construction contracts, any property damage claimed were "expected" and thus not caused by an occurrence as that term is defined in the [commercial general liability] policy. Damages to property other than the insured's work or product would be "unexpected" and, thus, caused by an occurrence.

*Id.* at 456–57. Other courts also have concluded that when an insured is liable because its product or construction work is substandard or non-conforming, not because it causes personal injury or damage to other property, it is "expected" from the standpoint of the insured and therefore not covered by a commercial general liability policy. *See Penn Am. Ins. Co. v. Valade*, 28 Fed.Appx. 253, 258, 2002 WL 99143 (4th Cir.2002) ("Accordingly, an 'accident' does not occur when property damage is caused by defective or poor workmanship, because an insured should foresee and expect the resulting damage."); *Traveler's Indem. Co. of Am. v. Miller Bldg. Corp.*, 2003 U.S. Dist. LEXIS 24300 (E.D.Va.2003); *Mut. Benefit Group v. Wise M. Bolt Co.*, 227 F.Supp.2d 469 (D.Md.2002). The court finds this line of cases persuasive and pre-

---

3. *Nationwide Mut. Ins. Co. v. Wenger*, 222 Va. 263, 278 S.E.2d 874 (1981) does involve a similar factual scenario; however, *Wenger* denied coverage based upon an exclusion for property damage to work performed by or on behalf of the named insured. However, Cincinnati has not raised a similar exclusion in the present case.

4. The policy in *Harbor Court Associates* included within the definition of "occurrence" that the property damage be unexpected from the standpoint of the insured rather than making this requirement a separate exclusion. *Id.* at 455–56.

dicts the Supreme Court Virginia would find it persuasive as well.

■ Applying this reasoning to the present case, the court finds that the Hotel's losses were expected from the standpoint of the insured and therefore not covered. The Commission entered into a contract with the Hotel via the Deed of Easement in which the Commission granted to the Hotel certain property interests in the Conference Center. The Commission expected to be liable if it failed to perform under the Deed of Easement. Its liability was both foreseeable and non-fortuitous, in marked contrast to the grist for the standard commercial general liability policy insurance against liability for personal injury or property damage to property other than the insured's own work.[5] If the Commission wished to insure proper construction of the Conference Center, it should have required a performance bond. In the absence of a performance bond, the Commission's recourse for repair costs is an action against the contractors responsible for the defective construction, not a claim against its liability insurer.

In addition to the courts that have denied coverage because contractual damages are expected, other courts have held that the word "accident" as used in the definition of occurrence involves a degree of fortuity not present when the insured's defective performance of a contract causes injury to the insured's own work or product. *See ACS Construction Co. v. CGU,* 332 F.3d 885 (5th Cir.2003) (applying Mississippi law); *Norwalk Ready Mixed Concrete v. Travelers Ins. Co.,* 246 F.3d 1132 (8th Cir.2001) (applying Iowa law); *J.Z.G. Resources. Inc. v. King,* 987 F.2d 98 (2nd Cir.1993) (applying New York law); *U.S. Fid. & Guar. Corp. v. Advance Roofing &*

*Supply Co.,* 163 Ariz. 476, 788 P.2d 1227, 1233 (1990); *McAllister v. Peerless Ins. Co.,* 124 N.H. 676, 474 A.2d 1033 (1984) ("The fortuity implied by reference to accident or exposure is not what is commonly meant by a failure of workmanship."); *Hawkeye–Security Ins. Co. v. Vector Construction Co.,* 185 Mich.App. 369, 460 N.W.2d 329, 334 (1990) ("we hold that the defective workmanship of Vector, standing alone, was not the result of an occurrence within the meaning of the insurance contract."); *Western World Ins. Co. v. Carrington,* 90 N.C.App. 520, 369 S.E.2d 128 (1998); *Snyder Heating Co. v. Pennsylvania Mfrs.' Ass'n Ins. Co.,* 715 A.2d 483, 487 (Pa.Super.1998) ("Provisions of a general liability policy provide coverage ... if the insured work or product *actively malfunctions,* causing injury to an individual or damage to another's property. These types of insurance policies involve risks that are limited in nature; they are not the equivalent of a performance bond on the part of the insurer." (emphasis in original) (citations omitted)). Although the reasoning of these cases differs slightly, they reach the same conclusion-that damages limited to the insured's work or product and resulting from the insured's defective performance of a contract are not covered losses under a commercial general liability policy. Consequently, these cases also support the conclusion reached by this court.

The Commission does cite two cases which hold that damages to the insured's own product resulting from defective construction are covered occurrences under a commercial general liability policy. *U.S. Fid. & Guar. Co. v. Wilkin Insulation Co.,* 144 Ill.2d 64, 161 Ill.Dec. 280, 578 N.E.2d

5. Although the Commission was forced to temporary close the Hotel Roanoke during the repairs to the Conference Center, temporarily closing an adjacent business does not transform the repairs into an occurrence; rather, the liability arising from shutting down the neighboring business is simply a component of the repair costs.

926 (1991) (holding that the costs of removing asbestos constituted an occurrence); *Ohio Cas. Ins., Co. v. Terrace Enters.*, 260 N.W.2d 450 (Minn.1977) (holding that repairs necessitated by a builder's negligent construction constituted an occurrence). Based upon these cases, the Commission argues that the continuous exposure to the steel slag constitutes an occurrence.[6] The court disagrees. First, the cases cited by the Commission appear to be a minority view. This court finds that the majority view is better reasoned and more likely to be accepted by Virginia. Second, the Commission incorrectly focuses upon the Conference Center's exposure to the steel slag rather than contractor's use of slag as fill material. Accordingly, the court rejects the Commission's arguments.[7]

The Commission also argues that the Certificate issued in 1995 alters the analysis. The court disagrees. The Certificate states that the endorsements are "[s]ub-ject to the policy terms," and the policy requires that losses be unexpected from the viewpoint of the insured. It follows that the expectedness of the damages in the present case forecloses recovery under the Certificate.[8] Similarly, the Commission cannot recover under the umbrella policy because the definition of occurrence in that policy requires that the damages be unexpected from the standpoint of the insured.

## IV.

When an insured defectively performs a contract and the defective performance only damages the insured's work or product, the resulting contractual liability is expected for purposes of a commercial general liability insurance policy and therefore excluded from coverage. In the present case, all damages were caused by the Commission's defective performance of the Deed of Easement and limited to the Conference Center. Therefore, the Com-

6. The Commission also cites *Maryland Cas. Co. v. Reeder*, 221 Cal.App.3d 961, 270 Cal. Rptr. 719 (1990), for support. However, *Reeder* states that "[g]enerally liability policies ... are not designed to provide contractors and developers with coverage against claims their work is inferior or defective. The risk of replacing and repairing defective materials or poor workmanship has generally been considered a commercial risk which is not passed on to the liability insurer. Rather, liability coverage comes into play when the insured's defective materials or work cause injury to property other than the insured's own work or products." *Id.* at 967, 270 Cal.Rptr. 719 (citations omitted). Consequently, *Reeder* is consistent with *Doverspike* and the other cases holding that a commercial general liability insurance policy does not insure against the insured's defective performance of a contract when the defective performance only injures the insured's own work or product.

7. The Commission also argues that two Cincinnati agents admitted during depositions that the progressive construction damage to the Conference Center as a result of the slag constituted an occurrence. However, where a contract "is unambiguous, it is inappropriate to resort to extrinsic evidence; an unambiguous document should be given its plain meaning." *Great Falls Hardware Co. v. South Lakes Village Ctr. Assocs. Ltd. Partnership*, 238 Va. 123, 380 S.E.2d 642, 643 (1989). Because this court finds that the insurance contract unambiguously does not provide coverage for repairs resulting from the insured's defective performance, the court does not resort to extrinsic evidence.

8. Moreover, interpreting the commercial general liability policy as to not cover the insured's defective performance under a contract when the defective performance only injures the insured's own work or product is not inconsistent with the Certificate's notation that the policy includes cross-liability and contractual liability for indemnification under the Deed of Easement. If the Commission's defective performance under the Deed of Easement causes injury to something other than its own work i.e. a Hotel employee or guest, cross-liability and contract-liability coverage may exist.

mission is not entitled to coverage, and Cincinnati's motion for summary judgment is granted.

### FINAL ORDER

In accordance with the Memorandum Opinion entered this day, it is hereby **OR-DERED** and **ADJUDGED** that the Cincinnati Insurance Company's motion for summary judgment is **GRANTED**.

This action is hereby **STRICKEN** from the active docket of this court.